Bill PIERCE, G. Fred Shirley and Randall Callahan, suing on behalf of themselves and all participants of the NECA–IBEW Welfare Trust Fund Working In Jurisdiction Local IBEW 175, Plaintiffs-Appellants,

v.

NECA–IBEW WELFARE TRUST FUND, Defendant-Appellee.

No. 78–1242.

United States Court of Appeals, Sixth Circuit.

Argued April 16, 1980.

Decided May 12, 1980.

S. Del Fuston, Chattanooga, Tenn., for plaintiffs-appellants.

Ben O. Duggan, Jr., Duggan, McDonald & Hawley, Chattanooga, Tenn., Hugh J. McCarthy, Chicago, Ill., for defendant-appellee.

Before EDWARDS, Chief Judge, WEICK and MERRITT, Circuit Judges.

PER CURIAM.

The issue in this appeal is whether the trustees of an employee welfare trust vio-lated the Employment Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, *et seq.* and Section 302 of the Labor-Management Relations Act of 1947, 29 U.S.C. § 186, (LMRA), by enacting a certain amendment to the trust agreement.

Plaintiffs Pierce, Shirley and Callahan are members of Local 175 of the International Brotherhood of Electrical Workers. As a result of a contract between the Union and the "Chattanooga Division, East Tennessee Chapter of the National Electrical Contractors Association," an employer group, the plaintiffs were all participants in the defendant NECA–IBEW Welfare Trust Fund for some time between July 1, 1971, and December 31, 1976. The Fund is a multi-employer, multi-union pooled trust fund, which pays health and disability benefits, and is administered by a Board of Trustees composed of various employer and union representatives.

Under the Trust Fund Agreement, the Fund's Trustees as a matter of discretion are empowered to alter benefit rules for participation in the Fund. The controversial amendment affects benefits of employees whose unions and employers agree to withdraw from participation in the Fund.[1] Before the amendment was passed, the Agreement provided health coverage for a three, six, or nine month period following the employer's withdrawal date, depending upon past contributions, measured in workhours. The Trustees observed, however, that a previous withdrawal of a large contributor had strained the Fund's resources. They apparently had not foreseen such a contingency and had not provided reserves for such coverage. Accordingly, the Trustees amended the Agreement on January 16, 1976, effective January 1, 1976, reducing the extended coverage period to 31 days.

The July 1, 1976, edition of the "Summary Plan Description," which was distributed to plan participants, noted the change in the extended benefits. The record does not indicate any prior notification.

---

1. Plaintiffs claim that the amendment affected only eligibility requirements. We believe such an amendment also constituted an alteration of benefits.

Dissatisfied with the new plan, the Chattanooga contractors association and the local union, agreed to withdraw from the Fund, and employers stopped contributing to the Fund on December 31, 1976. Plaintiffs then brought suit in the District Court for declaratory relief against the Fund on their own behalf and as representatives of a class comprised of the Local 175 members. Their prayer for relief asks that the amendment not apply to them, and that they be granted coverage for the three, six, or nine month period following the withdrawal date, in accordance with the preamended plan.

The District Judge held that applying the amendment to plaintiffs did not violate either Act. He found that the Trustees' actions were not "arbitrary or capricious" and "were for the sole benefit of the participant and beneficiaries of the trust," in accordance with the LMRA. He also found under ERISA that the Trustees acted with the degree of "care and skill 'that a prudent man' would exercise under like circumstances," and that they managed the Fund in accordance with the trust documents.

Plaintiffs' claims invoke five related legal theories. Primarily, they argue that the right to post-withdrawal benefits had already vested for the three, six, or nine month periods (depending upon the particular employee) because previous contributions were designed to cover those future periods. They claim that under either ERISA or LMRA, the Trustees are not permitted to pass retroactive amendments that eliminate "vested" property rights. Plaintiffs' other arguments are related to the first. Their second contention is that the trustees must give adequate notice of changes in benefits so that participants do not unwittingly and unwillingly forfeit vested rights by failing to withdraw in time from the Fund. Plaintiffs argue that if they had withdrawn, for instance, the day before the amendment came into effect, they would have been entitled to three, six, or nine months of coverage after withdrawal.

Third plaintiffs complain that, even assuming rights can be changed once they have vested, the amendment arbitrarily discriminates against employees who choose to withdraw from participation. Plaintiffs' fourth and fifth arguments are that the Trustees violated their ERISA fiduciary duties by failing to provide reserves to pay benefits of withdrawing employee participants, and by failing to report such contingent liabilities in financial statements filed with the Secretary.

We, however, agree in whole with the reasoning of the District Court opinion found at 488 F.Supp. 559 (E.D.Tenn.1978). Accordingly, judgment is affirmed.