INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL AND ORNAMENTAL IRON WORKERS LOCAL NO. 111, a labor organization and Robert O. Figg, an individual, Plaintiffs-Appellees,

v.

Allen DOUGLAS et al., as Trustees of Iron Workers Tri-State Welfare Plan, Defendants-Appellants.

No. 80–1644.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 7, 1981.

Decided May 1, 1981.

Hugh J. McCarthy, Jr., Chicago, Ill., for defendants-appellants.

Herbert M. Berman, Chicago, Ill., for plaintiffs-appellees.

Before CUMMINGS and CUDAHY, Circuit Judges, and BONSAL, Senior District Judge.*

BONSAL, Senior District Judge.

Defendants-appellants Allen Douglas, *et al.*, Trustees of the Iron Workers Tri-State Welfare Plan ("the Trustees"), appeal from a judgment of the United States District Court for the Northern District of Illinois, Eastern Division. The district court held that the Trustees lacked the authority to amend the Agreement and Declaration of Trust of the Welfare Plan ("the Agreement"), and rules and regulations thereunder, "in such a way as to deprive participants in the Welfare Plan under the jurisdiction of Local No. 111 of any of the benefits ... which arise out of hours accumulated on their behalf in their Reserve Accumulation Accounts."

The plaintiffs are the International Association of Bridge, Structural and Ornamental Iron Workers Local No. 111 and Robert O. Figg, President of the Local Union ("Local 111").

The Iron Workers Tri-State Welfare Fund is a pooled, multi-union, multi-em-

---

* Senior District Judge Dudley B. Bonsal of the Southern District of New York is sitting by designation.

ployer trust fund jointly administered pursuant to the Agreement by a Board of Trustees, half of whom are appointed by labor unions and half of whom are appointed by employers. The Fund provides participants and their families with hospital, medical care, death benefits and other benefits. It exists for the benefit of the employees of contributing employers (the participants do not contribute). The participants are members of eleven Local Unions which have collective bargaining agreements with their employers. Additional income of the Fund is derived from investment of reserves.

The Trustees are empowered by the Agreement to establish benefit levels and to promulgate eligibility rules. Article VI, Section 4 of the Agreement provides:

> The Trustees may promulgate such rules and regulations as may, in their discretion, be proper and necessary for the sound and efficient administration of the Trust, provided that such rules and regulations are not inconsistent with this Agreement and Declaration of Trust.

The eligibility rules permit an employee to enjoy "continued eligibility" under certain circumstances, even though he has not complied with the basic requirement stated in Sub-part A of the rules. Sub-part A provides that an employee's eligibility is to be determined on a quarterly basis; he must perform 250 hours of work during a three-month period to remain eligible for benefits during the subsequent three-month period.

Sub-parts B and C create exceptions to this requirement. Sub-part B provides for continued eligibility if the employee has worked for the specified numbers of hours during prior months. Sub-part C creates a "reserve accumulation account," in which the hours that an employee works for a contributing employer are credited to an employee's account. If an employee's account contains "hours" in excess of a figure designated by the Trustees, he may be eligible for benefits even though not in compliance with Sub-part A. Therefore, under the eligibility rules in effect prior to

the amendment, an employee's eligibility could continue for at least three months, and indeed for longer periods under Sub-parts B and C, after the employer ceased making contributions on the employee's behalf.

On April 15, 1977, the Trustees, by a vote of eleven to five, amended the eligibility rules to limit the eligibility for benefits of employees whose employers had ceased to make contributions to the Fund. At the Trustees' meeting, Mr. McLeish, Consultant to the Fund, reported that as of December 31, 1976, the extended liability of the Fund exceeded its assets by approximately $400,000. Mr. Hanft, Administrator of the Plan, reported that disbursements had exceeded income during the first three months of 1977.

The amendment provided:

> In the event that a Collective Bargaining Agreement requiring contributions to the Welfare Fund is not succeeded by a Collective Bargaining Agreement requiring contributions to the Welfare Fund, then a Participating Employer which is no longer obligated under the terms of a Collective Bargaining Agreement to make contributions to the Welfare Fund shall cease being a Participating Employer on the date that the obligation terminates, and its Employees shall not be. Eligible Employees as to any claims incurred on or after the thirty-first calendar day following the date on which the obligation to contribute terminated.

Under the amendment, certain employees are eligible for welfare benefits for a maximum of 31 days following the date on which their employer is no longer obligated to make contributions to the Fund.

Plaintiffs argued at trial that the Trustees, in adopting the amendment, violated the Labor Management Relations Act, 29 U.S.C. § 186, and the Employees' Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* The district court concluded as a matter of law that the Trustees, in attempting to deprive participants of already earned reserve accumulations, had acted in a manner inconsistent with

their fiduciary obligations. The district court held that the action of the Trustees was arbitrary and capricious and accordingly "rescinded" the amendment as it applied to members of Local 111 and enjoined the Trustees from amending the Plan to the detriment of members of Local 111.

The Trustees appeal and we reverse.

DISCUSSION

### Justiciability

Local 111 has not withdrawn from the Plan but rather continues to be a participating Union. Therefore, the Trustees contend that Local 111's complaint, requesting declaratory relief, presents no "case or controversy" under Article III of the Constitution and thus no "justiciable" issues.

■ Section 502 of ERISA, 29 U.S.C. § 1132(a)(1)(B), provides that "a civil action may be brought by a participant or beneficiary ... to clarify his rights to future benefits under the terms of the plan." Local 111 seeks such a clarification; the right of its members to future benefits would be affected by the amendment in the event that it should later withdraw from the Plan. Therefore, the district court had jurisdiction under 29 U.S.C. § 1132(e).*

■ In their complaint, Local 111 seeks declaratory relief. Pursuant to 28 U.S.C. § 2201, a court may grant such relief in "a case of actual controversy." The Trustees argue that such a controversy does not exist, and that even though the district court had subject matter jurisdiction over the action, there existed no "justiciable" case to be resolved.

In view of the dispute between the parties as to whether the Trustees had the authority to amend the Plan in such a fashion as to deprive participants of accumulated "hours" in their reserve accounts, we believe that the district court's holding that a case or controversy under Article III of the Constitution exists was not erroneous.

*Aetna Life Insurance v. Haworth*, 300 U.S. 227, 239–40, 57 S.Ct. 461, 81 L.Ed. 617 (1937); *Cutaiar v. Marshall*, 590 F.2d 523 (3d Cir. 1979). *See also International Longshoremen's Association, AFL–CIO v. Sea-Train Lines, Inc.*, 326 F.2d 916 (2d Cir. 1964); *El-Paso Building & Construction Trades Council v. El-Paso Chapter, Assoc. of Gen. Contractors of America*, 376 F.2d 797 (5th Cir. 1967).

### Trustees' Authority to Amend

■ The Trustees contend that certain findings of fact and conclusions of law of the district court were clearly erroneous. They contest the district court's conclusions of law that they acted in an "arbitrary and capricious" manner in adopting the amendment and that they attempted to deprive participants of already earned reserve accumulations, thus acting in a manner inconsistent with their fiduciary obligations.

In a recent decision, *Pierce v. NECA–IBEW Welfare Trust Fund*, 620 F.2d 589 (6th Cir. 1980), *cert. denied*, —— U.S. ——, 101 S.Ct. 574, 66 L.Ed.2d 474, the Court of Appeals for the Sixth Circuit upheld an amendment identical in wording to the one here challenged. In *Pierce*, one of the participating Local Unions voluntarily withdrew from participation in the Fund approximately one year after the adoption of the challenged amendment. Benefits were terminated with respect to members of the withdrawing Union for all claims incurred after the expiration of the 31-day period.

The court, "agree[ing] in whole" with the reasoning of the district court (reported at 488 F.Supp. 559 (E.D.Tenn.1978)), held that the Trustees' actions were not arbitrary and capricious but rather were for the sole benefit of the participants and beneficiaries of the Trust. The district court examined the applicable standards under the Labor Management Relations Act and ERISA and stated:

---

* However, in *Guthrie v. Dow Chemical Co.*, 445 F.Supp. 311 (S.D.Texas 1978) and *O'Brien v. Sperry Univac*, 458 F.Supp. 1179 (D.D.C.1978), the courts rejected similar reasoning and held that plaintiffs were not seeking to clarify their

rights to future benefits, but to have certain portions of the plans under review declared void. Accordingly, the courts held that since Section 1132 was inapplicable, they were without jurisdiction.

Under LMRA the standard of conduct required of trustees of welfare and pension funds is that they not act in an "arbitrary and capricious" manner in the administration of the trust. *Local Union No. 5 Etc. v. Mahoning & Trumbull County Building Trades Welfare Fund, et al.,* 541 F.2d 636 (6th Cir. 1976); *Rehmar v. Smith,* 555 F.2d 1362, 1371 (9th Cir. 1976). Both LMRA and ERISA require that such fiduciaries manage the fund for the sole and exclusive benefit of the participants and beneficiaries. *See* 29 U.S.C. § 302 and 29 U.S.C. § 1104. Further relevant requirements of ERISA are that the trustees of such funds exercise the care and skill "that a prudent man" would exercise under like circumstances [29 U.S.C. § 1104(a)(1)(B)] and that they manage the fund in accordance with the documents governing the trust [29 U.S.C. § 1104(a)(1)(B)].

Applying these standards to the actions of the Trustees in this lawsuit, the Court is of the opinion that the plaintiffs have failed to establish any grounds for judicial interference with such actions. *Pierce, supra* at 564.

The Agreement provides that "the Trustees may promulgate such rules and regulations as may, in their discretion, be proper and necessary for the sound and efficient administration of the Trust . . . ." We find no evidence of any abuse of such discretionary authority; indeed, the decision to adopt the amendment appears to have been made for the sole benefit of the employees covered by the Plan. In view of the reports made to the Trustees, they believed it necessary to limit the period during which claims of employees would be recognized once the employer had ceased to make contributions to the Fund. In so amending the Agreement, the Trustees were endeavoring to insure the viability of the Fund.

The district court found that "the crediting of withdrawing employee participants with hour bank or reserve accumulation benefits would not impair the financial condition of the Fund." A review of the record satisfies us that this finding is clearly erroneous. Indeed, the Trustees adopted the amendment because they feared that the Fund might become financially impaired. They did not act in an arbitrary and capricious fashion but rather within their discretion as fiduciaries. *See Pierce, supra.*

The district court concluded as a matter of law that "by attempting to deprive participants of already earned reserve accumulations or bank hours, the trustees have attempted to reduce their wages . . . ." However, welfare benefits do not become vested until a claim arises that is payable under the Plan; these benefits are contractual rights subject to amendment by the parties to the Agreement. *See Pierce, supra; Turner v. Local Union No. 302,* 604 F.2d 1219, 1226 (9th Cir. 1979). The finding of the district court that the Trustees, by adopting the amendment, were attempting to reduce wages is clearly erroneous.

Local 111 maintains that because wage and welfare contributions are "negotiated as one package," all rules and regulations issued by the Trustees concerning eligibility requirements must conform to the negotiated collective bargaining agreement. The district court accepted this contention and concluded as a matter of law that by amending the eligibility rules the Trustees acted "in a manner inconsistent with . . . their obligation to act in a manner consistent with the collective bargaining agreements."

We are not persuaded by this argument. In the absence of any specific language in the Trust Agreement subordinating it to the collective bargaining agreement, *see Alvares v. Ericksen,* 514 F.2d 156, 161 (9th Cir. 1975), we find controlling the language of the Trust Agreement, which authorizes the Trustees to adopt amendments by majority vote except when "in contravention of or inconsistent with the existing Collective Bargaining Agreement between the parties hereto." We find no such inconsistency, since the challenged amendment is operative only "in the event that a collective bargaining agreement requiring contributions to the Welfare Fund is not succeeded

by a collective bargaining agreement requiring contributions to the Welfare Fund." In the event that no such successor agreement is reached, the union members will not participate in the Plan.

We believe that the Trustees, in adopting the challenged amendment, acted for the sole benefit of the participants in the Plan and displayed the care and skill that a prudent man would exercise under like circumstances. Accordingly, the judgment of the district court is reversed, and the action is dismissed.