NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

CLERKS AND CHECKERS LOCAL NO. 1593, INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, AFL–CIO, et al., Respondents.

No. 79–3522.

United States Court of Appeals, Fifth Circuit.
Unit B

May 4, 1981.

---

Elliott Moore, L. Joseph Ferrara, Peter M. Bernstein, Deputy Associate Gen. Counsels, NLRB, Washington, D. C., for petitioner.

Robert B. Keith, pro se.

Toole, Taylor, Moseley & Joyner, Gary A. Bubb, Jacksonville, Fla., for respondents.

Before GODBOLD, Chief Judge, HATCHETT, Circuit Judge and MARKEY, Chief Judge.*

GODBOLD, Chief Judge:

The union local, affiliated with the International Longshoremen's Association, represents stevedoring clerks and checkers in the Jacksonville, Florida area. This local was a party to collective bargaining agreements with the Jacksonville Maritime Association, Inc. The agreements incorporated by reference trust provisions of collective bargaining agreements between the Association and ILA Local No. 1408, which represents longshoremen in the Jacksonville area. ˙The provisions required the signatory association employers to make welfare, vacation, and pension contributions to the ILA Welfare, Vacation and Pension Fund for the benefit of eligible union members. The

---

* Honorable Howard T. Markey, of the United States Court of Customs and Patent Appeals, sitting by designation.

Fund is a joint trust fund administered by a board of six trustees, three appointed by the ILA and three by the Association.

In an unfair labor practice case brought against the union local, the Board found that the union had violated §§ 8(b)(1)(A) and (2) of the Act by refusing to refer employee Beckham for employment through its exclusive referral service and that the referral system illegally conditioned referral priority upon union membership. The Board ordered the union and its representatives to make Beckham whole for any loss of pay suffered by reason of the discriminatory refusal to refer him.

The Board's General Counsel, the union and Beckham reached an agreement on the amount of back pay owed Beckham and the amount of contributions to be paid to the Fund to prevent his suffering loss of contractual fringe benefits. The General Counsel, the union, and the Fund and its trustees then entered into a stipulation regarding compliance with the Board's order. The union and the Fund stipulated that: they had no objection to the Board's order, which they conceded was valid in all respects; the union and General Counsel had agreed on the amount of contributions that the union was willing to pay; the only compliance issue that has arisen was that the Fund refused to accept the retroactive contributions on Beckham's behalf. It was stipulated that the Board's Regional Director would bring a supplemental proceeding in which the Fund was guaranteed the right to intervene and that in the event judicial proceedings were necessary to enforce the Board's determination of compliance the only issue before the court would be that of the Fund's refusal to accept the contributions.

The Regional Director issued a back pay specification setting out the fringe contributions to be paid and alleging that but for the union's unlawful discrimination employer members of the Association would have forwarded the contributions for Beckham during the relevant period and the Fund would have been required under the collective bargaining agreements to accept them. The Fund filed its answer setting forth several defenses.[1]

The case was transferred to the Board, and the General Counsel moved for summary judgment. The Fund objected to summary judgment on the ground that no provisions had been made for payment of interest, insurance premiums, and costs and additional administrative expenses that might arise and that the Fund should be made whole for these items.

The Board granted summary judgment. It found that for purposes of accepting fringe benefits contributions the Fund was an agent of the union and the signatory contributing employers, and as such was required to accept the contributions. The Board found merit to the Fund's financial objections and ordered the union to compensate the Fund for administrative costs and other expenses and loss of interest occasioned as a result of the Fund's acceptance of the retroactive contribution.

■ The Board has moved for an enforcement order. The Fund contends that the Board had no jurisdiction or authority to order the Fund to accept the contributions. The Board's predicate for bringing the Fund in as a party and for entering an order against it is that for the limited purpose of accepting contributions the Fund is an agent of both union and employer. We agree. *See Local 138, International Union*

---

1. The Fund was denied due process because it was not a party to the Board's original order; a compliance order against the fund would jeopardize the status of the Fund under Internal Revenue and Department of Labor laws and regulations; the Fund lacked authority to accept the contributions because acceptance would violate the Labor Management Relations Act; acceptance of the funds would be a prohibited transaction under ERISA; a retroactive

participation in the Fund would deprive participants of the right to interest and income that would have been earned had the contributions been made when required; the Fund would incur additional administrative expenses and costs in providing retroactive benefits to Beckham; a compliance order would establish a bad precedent; the Fund can deny retroactive coverage in order to achieve economic stability and maintain maximum earning potential.

*of Operating Engineers v. NLRB*, 321 F.2d 130, 137 (2d Cir. 1963); *Local 38, Sheet Metal Workers International Association*, 194 NLRB No. 17, 1972 NLRB Dec. ¶ 23, 634; *Local 80, Sheet Metal Workers International Association*, 161 NLRB No. 7, 1967 NLRB Dec. ¶ 20, 806. *But see NLRB v. United Brotherhood of Carpenters*, 531 F.2d 424, 426–27 (9th Cir. 1976).

█ When implementing back pay awards the Board is granted broad discretion in formulating remedies to make employees whole and to effectuate the policies of the Act, *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 94 S.Ct. 414, 38 L.Ed.2d 388 (1973); *NLRB v. Pilot Freight Carriers, Inc.*, 604 F.2d 375 (5th Cir. 1979). For the limited purpose of accepting contributions, the Fund is a mere receptacle into which the union must pay contributions in order to carry out the Board's back pay order and make the employee-beneficiaries whole for the union's unfair labor practice.

█ This limited agency of the Fund to receive contributions does not conflict with common law principles relating to fiduciaries or with ERISA provisions requiring that trustees of such a fund not be subject to the control of any other person or organization. It does not extend to discretionary decisions of the trustees involving investment of trust funds or determination of eligibility requirements for benefits,[2] *see Agro v. Joint Plumbing Industry Bd.*, 623 F.2d 207 (2d Cir. 1980); *Pierce v. NECA–IBEW Welfare Trust Fund*, 620 F.2d 589 (6th Cir. 1980); *Gordon v. ILWU–PMA Benefit Funds*, 616 F.2d 433 (9th Cir. 1980). Moreover, because the union and not the Fund must pay the costs associated with processing the contributions, compliance with the Board order and acceptance of the contributions fall squarely within the fiduciary duty imposed on the Fund's trustees by both ERISA and the common law: to administer the trust solely in the interest of its benefi-

ciaries, 29 U.S.C. § 1104(a)(1); Restatement (Second) of Trusts § 170. It is hornbook law that trustees have a duty to take possession of trust property as soon as reasonably possible. G. C. Bogert & G. T. Bogert, *Law of Trusts*, § 97 (5th ed. 1973).

The Fund also urges that it was deprived of due process in the initial determination by the Board of the fact of the employer's obligation to make contributions and the amount of the contributions. It is difficult to understand how the Fund had any interest in this part of the proceeding, and, moreover, it has agreed that it does not controvert these aspects of the Board's actions. The Fund became a party in interest only in the remedy proceedings, and it was brought in as a party and participated. The Fund now contends that it was entitled to be a party in the ascertainment of the *amount* of contributions because it does not maintain a separate account for each employee, as the Board either assumed or found, but rather that all funds received are comingled and income is earned on the total pool of funds at variable and varying rates, and differing levels of benefits are paid and credited to the different beneficiaries from time to time paid from this common account. Thus the Fund contends that the raw calculation of the amount to be paid in cannot be correct. The Fund couples with this an argument that the Board's order that the union shall be responsible for costs and expenses is not a sufficient protection to it.

In oral argument the Fund asserts that retroactive payment of contributions into its single general account will necessitate recalculating thousands of benefits heretofore paid and that this undertaking is in a practical sense an impossible task and enormously expensive.

█ The short answer to this due process argument is that it was not raised by the

---

**2.** We need not decide whether the Fund's limited agency extends to decisions by the trustees to refuse to accept contributions ordered by the Board where the Fund's administrative and processing costs in receiving and handling the contributions will exceed those normally in-

curred in handling contributions generally and the Board has not ordered the union to pay these costs to the extent they are extraordinary. In this case the Board ordered the union to pay any excess costs.

Fund as an issue when it appeared as a party before the Board. Even if due process was an issue the contention now made that it will be necessary to go back and recalculate all benefits that have been paid since the contribution for Beckham should have been made, and that this task is an impossible one and the costs thereof astronomical, are arguments not made in this case until the case was on appeal and even then not clearly presented until oral argument.

The Board's order is ENFORCED.