**READY METAL MANUFACTURING COMPANY, Plaintiff,**

v.

**INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, UAW and its Amalgamated Local 477 and Amalgamated Trust and Savings Bank, Defendants.**

No. 88 C 10497.

United States District Court, N.D. Illinois, E.D.

June 26, 1989.

Supplemental Opinion and Order June 30, 1989.

George E. Weaner and Gene H. Hansen, Law Office of George E. Weaner, Chicago, Ill., for plaintiff.

Stanley Eisenstein, Harold A. Katz and Michael B. Erp, Katz, Friedman, Schur & Eagle, Chicago, Ill., for UAW.

William J. Dunn, Chicago, Ill., for Amalgamated Trust & Sav. Bank.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Ready Metal Manufacturing Company ("Ready Metal") initially sued International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW and its Amalgamated Local 477 (collectively "UAW") and Amalgamated Trust and Savings Bank ("Bank") in the Circuit Court of Cook County, seeking:

    1. a declaration that the Supplemental Unemployment Benefits Trust (the "Trust") established pursuant to a now-expired collective bargaining agreement between Ready Metal and UAW had terminated and

    2. an order distributing the remaining trust corpus to Ready Metal.

UAW, with Bank's consent, filed a timely notice of removal to this District Court, asserting grounds for removal identified later in this opinion.

Each of Ready Metal and UAW has now moved for summary judgment under Fed. R.Civ.P. ("Rule") 56. However, this Court's in-depth review occasioned by the cross-motions has disclosed a lack of subject matter jurisdiction here.[1] In accordance with 28 U.S.C. § 1447(c), then, this action will promptly be remanded to the state court unless this Court is persuaded to the contrary by a timely submission from any of the litigants.

### Background [2]

In 1969 Ready Metal and UAW negotiated a collective bargaining agreement ("CBA") that established a Supplemental Unemployment Benefits Plan ("Plan"). In August 1971 Ready Metal, UAW and Bank entered into a Supplemental Unemployment Benefits Trust Agreement (the "Trust Agreement"), under which Ready Metal was to make contributions on behalf of the "eligible employees" and Bank was

---

1. Of course this Court is "obliged to police the constitutional and statutory limitations on [its] jurisdiction" (*Kanzelberger v. Kanzelberger*, 782 F.2d 774, 777 (7th Cir.1986)). That is equally true in cases seeking declaratory relief (*Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239–41, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937)). And

by definition it is never too late to note the absence of subject matter jurisdiction (see, e.g., *Ross v. Inter–Ocean Ins. Co.*, 693 F.2d 659, 660 (7th Cir.1982)).

2. None of the relevant facts are in dispute.

to serve as Trustee and implement the Plan's terms.

That arrangement continued through July 1985, when the last CBA between Ready Metal and UAW expired. Despite two months of negotiations the parties were unable to reach agreement, and a strike ensued. Ready Metal responded by hiring permanent replacements. In June 1986 UAW was decertified as the collective bargaining agent for Ready Metal's employees.

Ready Metal has ceased contributing to the Trust and has discontinued the Plan. Because the Plan is unquestionably an "employee welfare benefit plan" within the meaning of ERISA, 29 U.S.C. § 1002(1),[3] Bank (as Trustee) and the Trust are subject to extensive regulation under ERISA. All parties agree the Trust should be terminated, bringing into play Section 1103(d)(2):

> The assets of a welfare plan which terminates shall be distributed in accordance with the terms of the plan, except as otherwise provided in regulations of the Secretary.[4]

As for "the terms of the plan," however, Trust Agreement ¶ 14 says only this:

> In the event of termination of the Trust, all assets then constituting the Trust Fund, less any amounts constituting charges and expenses payable from the Trust Fund, shall be used until exhausted to pay benefits to eligible employees under the Plan and their beneficiaries.

And that is the problem, for there are no longer any "eligible employees under the Plan."[5] Thus the remaining funds—$27,-253.17 (including accrued interest) as of December 31, 1988—are just sitting in the Trust. Ready Metal has made a demand for the funds, but Bank refuses to release them without either the consent of all interested parties or a court order.

On November 3, 1988 Ready Metal filed this action in the state court. Its "Complaint for Declaratory Judgment and Equitable Relief" comprises two counts:

1. As already suggested, Count I seeks a declaration under Ill.Rev.Stat. ch. 110, ¶ 2–701 that the Trust is terminated and void.

2. Count II reincorporates the allegations in Count I and asserts that if Bank "as Trustee of the Trust, is allowed to retain the funds accumulated thereunder, it would be unjustly enriched." Ready Metal thus asks for an order directing Bank to tender to it all funds held in the Trust.

On December 14 UAW (with Bank's concurrence) filed a notice of removal to this District Court,[6] asserting two potential sources of jurisdiction:

1. under the civil enforcement provisions of ERISA Sections 1132(a)(3) and 1132(e)(1); and

2. under Labor–Management Relations Act ("LMRA") § 301, 29 U.S.C. § 185.

Both Ready Metal and UAW have since filed and tendered cross-memoranda on their respective summary judgment motions.[7] Though neither side raised the is-

---

**3.** All further references to ERISA will simply take the form "Section—," referring to the numbering in Title 29 rather than to the Act's internal numbering. This opinion will also use "Section—" in citing to the removal-and-remand provisions of Title 28—the numbers are sufficiently dissimilar and the context will make clear which statute is under discussion.

**4.** [Footnote by this Court] None of the parties has cited, nor has this Court found, any applicable regulations.

**5.** UAW does not deny that there are no "eligible employees," as that term is defined in Art. XXIV, § 3 of the last collective bargaining agreement (Ready Metal Mem. Ex. C). Rather UAW R. Mem. 2 n. 2 asserts the issue of eligible employees is irrelevant. Because of the disposi-

tion of this case this opinion need not (indeed cannot) venture into the merits of the dispute.

**6.** Although the lawsuit was then over 40 days old, this Court immediately reviewed the papers and confirmed the timeliness of the removal under Section 1446(b).

**7.** Bank answered the Complaint but has neither moved for summary judgment nor filed any memoranda on the current cross motions. Clearly Ready Metal's stated Count II concern as to Bank's unjust enrichment is ill-founded— Bank obviously makes no claim of right to the funds, is indifferent as to who actually receives them and is content to let Ready Metal and UAW fight the battle.

sue, this Court's review of the case in the context of the submitted materials suggested the absence of subject matter jurisdiction.[8] Further research and analysis have confirmed that such is the case under the principles of *Franchise Tax Board of California v. Construction Laborers Vacation Trust For Southern California*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

### Subject Matter Jurisdiction

It is of course axiomatic that "a defendant may not remove a case to federal court unless the *plaintiff's* complaint establishes that the case 'arises under' federal law" (*id.* at 10, 103 S.Ct. at 2846 (footnote omitted, emphasis in original)). Whether that is true of Ready Metal's Complaint is a function of declaratory judgment procedure and of the unique preemption problems presented by ERISA—both questions that were addressed by *Franchise Tax Board* in a context much like that in this case. Analysis is therefore facilitated by a brief review of *Franchise Tax Board*.

There the California Franchise Tax Board ("Board") sued the trustee of a multiemployer vacation trust ("Trustee") in a California state court, seeking to collect unpaid state income taxes by levying on funds held in trust for the employees. Trustee invoked its obligations under ERISA as the basis for nonpayment, removing the action to the federal court on that ground.

Board's two-count complaint failed to specify any particular statutory entitlement for the relief it sought. But the Supreme Court, after characterizing Board's first cause of action as a claim under the California Tax Code and the sec-

ond under California's Declaratory Judgment Act, then said (463 U.S. at 13, 103 S.Ct. at 2848):

> As an initial proposition, then, the "law that creates the cause of action" is state law, and original federal jurisdiction is unavailable unless it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims, or that one or the other claim is "really" one of federal law.

As in *Franchise Tax Board*, neither of Ready Metal's claims (Count I for declaratory relief and Count II for relief in equity against Bank's unjust enrichment) facially contains a federal question. Hence the *Franchise Tax Board* analysis is squarely on point here. Federal jurisdiction does not exist unless (1) an element of Ready Metal's well-pleaded state claims is a federal question or (2) one of the claims is "really" federal.[9]

1. *Is "some substantial, disputed question of federal law ... a necessary element" of either of Ready Metal's state claims?*

■ Plainly Count II's unjust enrichment claim implicates no federal law question. Federal law may come into play only by way of a defense: that is, ERISA may preempt any state law cause of action. *Franchise Tax Board, id.* at 14, 103 S.Ct. at 2848–49 is therefore fatal to Count II as a predicate for removal on that score:

> [S]ince 1887 it has been settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plain-

---

**8.** This Court's law clerk, Brian Sieve, Esq., assigned to prepare a proposed draft opinion for this Court's review, first spotted the issue. After consideration of the matter and a full review of *Franchise Tax Board* (referred to later in this paragraph of the text) and of other relevant authority, this Court directed that the draft be prepared along the lines reflected in this opinion. Needless to say, the placement of credit for the issue identification at Mr. Sieve's doorstep does not saddle him with any possible blame that may flow from its application—this Court has (as always) revised this opinion at

length and in detail, and all responsibility for the accuracy of the conclusion reached as well as the language employed is its own.

**9.** Diversity of citizenship is wholly lacking: Ready Metal is an Illinois corporation with its principal place of business here, UAW is an association with Illinois members (though it has its headquarters in Michigan) and Bank is also an Illinois corporation with its principal place of business here.

tiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case.

■ Count I presents a more difficult problem, for its claim does pose at least one question on which ERISA provides the rule of decision. As in *Franchise Tax Board, id.,* Ready Metal cannot obtain the relief it seeks "without a construction of ERISA and/or an adjudication of its preemptive effect . . .—all questions of federal law."

This opinion will not retrace *Franchise Tax Board's* extended analysis of that issue, including its protracted discussion and application of *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950) and *Gully v. First National Bank in Meridian,* 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936). Suffice it to say that *Franchise Tax Board,* 463 U.S. at 20, 103 S.Ct. at 2852 decided the declaratory judgment suit did not arise under federal law. Noting the fact—critical to this case as well—that Section 1132 authorizes suits only by employee benefit plan participants, beneficiaries, fiduciaries or the Secretary of Labor, the Court said (*id.* at 21–22, 103 S.Ct. at 2852–53, adapted to this case (footnotes omitted and emphasis in original)):

> The express grant of federal jurisdiction in ERISA is limited to suits brought by certain parties . . . as to whom Congress presumably determined that a right to enter federal court was necessary to further the statute's purposes. It did not go so far as to provide that any suit *against* such parties must also be brought in federal court when they themselves did not choose to sue. The situation presented by [Ready Metal's] suit for a declaration of [its rights under the Trust Agreement] is sufficiently removed from the spirit of necessity and careful limitation of district court jurisdiction that informed our statutory interpretation in *Skelly Oil* and *Gully* to convince us that, until Congress informs us

otherwise, such a suit is not within the original jurisdiction of the United States district courts. Accordingly, the same suit brought originally in state court is not removable either.

*2. Is either of Ready Metal's causes of action "really" one of federal law?*

■ *Franchise Tax Board, id.* at 22, 103 S.Ct. at 2852–53 also reconfirmed the principle that "a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." If Ready Metal's Complaint really presents federal law claims in substance, it may not defeat removal by cloaking those claims in state law terms. Perhaps the best known example of that proposition is a case that perforce arises under LMRA § 301, where "the pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization' " (*id.* at 23, 103 S.Ct. at 2853 (footnote omitted)).

Is ERISA such a statute? *Franchise Tax Board, id.* at 27, 103 S.Ct. at 2855 (footnote omitted) said "no"—at least when the plaintiff's claim does not come within the scope of Section 1132:

> ERISA carefully enumerates the parties entitled to seek relief under [Section 1132]; it does not provide anyone other than participants, beneficiaries, or fiduciaries with an express cause of action for a declaratory judgment on the issues in this case. A suit for similar relief by some other party does not "arise under" that provision.[10]

No more need be said to demonstrate the controlling force of that proposition here. Congress carefully limited the types of plaintiffs who may sue in federal court under ERISA. By clear negative implication, parties *not* listed in Section 1132 (and employers such as Ready Metal are conspicuously absent from the statutory enumeration) could not sue here. And because Ready Metal could not have sued here in the first instance, its lawsuit was not re-

---

**10.** [Footnote by this Court] In contrast, *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63–67, 107 S.Ct. 1542, 1546–48, 95 L.Ed.2d 55 (1987)

held state lawsuits that *do* fall within ERISA's civil enforcement provisions are removable, because they do "arise under" ERISA.

movable to this District Court—*Franchise Tax Board, id.* at 10 n. 9, 103 S.Ct. at 2847 n. 9 confirms the coextensiveness of original and removal jurisdiction.

That result may seem anomalous, for the litigants correctly recognize that to the extent the current dispute flows out of an employee benefit plan—an area with which ERISA is concerned—it "comes within the class of questions for which Congress intended that federal courts create federal common law" (*Franchise Tax Board, id.* at 26, 103 S.Ct. at 2855 (footnote omitted)). That means this case will be sent back to a state court to apply federal law. Nevertheless, that is the effect of the congressional ERISA enactment. Given *Franchise Tax Board*'s thorough analysis of the issue, this Court can add nothing more.

■ One final issue remains. UAW has also asserted the existence of jurisdiction here under LMRA § 301(a):

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

To be sure, the Supreme Court has taken a reasonably expansive view of the scope of that provision (see, e.g., *Franchise Tax Board*, 463 U.S. at 25 n. 28, 103 S.Ct. at 2854 n. 28). But the plain language of LMRA § 301(a) refutes UAW's characterization of *this* action. Although both UAW and Ready Metal did sign the Trust Agreement (along with Bank as Trustee), and although the Trust was established pursuant to a CBA, Ready Metal is not charging UAW with a "violation" of either contract.

Nor is UAW asserting a "violation" by Ready Metal—except perhaps in the far-fetched sense that the latter's bringing this lawsuit to secure distribution of the funds could be labeled such a "violation." Indeed, the dispute here centers not on an employer-union contract issue as such, but rather on the legal obligations of Bank (as trustee) with respect to the funds in its possession.

In sum, Ready Metal's dispute with Bank simply does not come within the language or spirit of LMRA § 301. Nor is that conclusion altered by the presence of UAW as a necessary party to that dispute, or even by perceiving that dispute as a contest between Ready Metal and UAW over the funds.[11]

### Conclusion

Although the parties failed to recognize the jurisdictional problem here, this opinion's analysis of *Franchise Tax Board* demonstrates this action was improperly removed. Accordingly this Court sua sponte orders this action remanded because "it appears that the district court lacks subject matter jurisdiction" (Section 1447(c)).[12]

As already indicated, neither movant has spoken to that issue (and thus to the force of *Franchise Tax Board* as a powerful direct precedent). For that reason the Clerk of this District Court is ordered to delay mailing the certified copy of the remand order until June 30, 1989 (see this District Court's General Rule 30(b)). If any litigant files a submission in this Court's chambers on or before June 29 treating with the question of subject matter jurisdiction, that submission will be taken into account in determining whether the remand will be implemented as scheduled.

---

11. That latter description would be inapt in any event. UAW does not claim entitlement to the funds, even asserting at one point that a charitable distribution should be made instead of returning the money to Ready Metal (UAW Mem. 11 n. 14).

12. This quoted version of the remand statute reflects its recent amendment (which took effect

November 19, 1988). Although this action was filed in the state court before that date, the new version would appear to apply to the December 14, 1988 removal. In any event, however, the same result would obtain under the statute's corresponding pre-amendment language:

> it appears that the case was removed improvidently and without jurisdiction.

## SUPPLEMENTAL MEMORANDUM
## OPINION AND ORDER

This Court's June 26, 1989 memorandum opinion and order (the "Opinion") directed the remand of this action to the Circuit Court of Cook County because of a jurisdictional flaw the litigants had not addressed—indeed had not perceived. In response to the Opinion's invitation to offer any reasons that might support retention of the action as falling within federal jurisdiction,[1] each of the two active litigants—Ready Metal and UAW—has tendered a submission in that respect. This supplement will explain briefly why neither submission is persuasive and why the remand order remains appropriate.

UAW initially raises two nonissues. They should be gotten out of the way at the outset.

■ First, UAW is a party to the Trust Agreement and stands as surrogate for the individuals who used to be participants and beneficiaries under the Trust.[2] But even if that might have qualified it as a "participant" entitled to sue under ERISA (see *International Ass'n of Bridge, Structural and Ornamental Iron Workers Local No. 111 v. Douglas*, 646 F.2d 1211, 1214 (7th Cir.1981)), that does not vest federal jurisdiction over a suit brought (as this one was) by an employer *not* entitled to sue under ERISA. Just as a potential federal defense cannot confer removal jurisdiction over a nonfederal cause of action, so a defendant cannot support removal by saying "If I had sued rather than being sued, there would have been federal jurisdiction."

■ Second, UAW points to the fact that Ready Metal's Complaint seeks a determination of rights under the Trust Agreement, an "employee benefit plan" as defined by ERISA. Again that is assuredly so (and Opinion at 3 said precisely that), but that parallels rather than distinguishing *Franchise Tax Board*. And as Opinion at 340–41 says, the perceived anomaly that the state court on remand would have to ascertain federal common law did not deter the Supreme Court from its decision compelling such remand (*Franchise Tax Board*, 463 U.S. at 26, 103 S.Ct. at 2855), and it cannot impede the same result here.

After those preliminaries UAW offers the facile suggestion that Ready Metal sues as a prospective "beneficiary" under the Trust Agreement and is thus a proper ERISA plaintiff. That kind of argument certainly does credit to the ingenuity of UAW's counsel, but it turns the statutory language and legislative history on its head to suggest that the employer-grantor is rendered a "beneficiary" within Section 1132 when it asserts that the nonexistence of any of the plan's specified beneficiaries should trigger a reversion of the idle funds that can no longer serve the Trust's purposes.[3] Nothing in *Firestone Tire and Rubber Co. v. Bruch*, —— U.S. ——, 109 S.Ct. 948, 957–58, 103 L.Ed.2d 80 (1989) (sought to be relied on at UAW Mem. 5) even hints at a different conclusion.

---

1. This supplement will assume familiarity with the Opinion and, consistently with that assumption, will adhere to (without repeating the definitions of) all terminology used in the Opinion.

2. That is true enough, but is really irrelevant to the issues identified in the Opinion. If anything, because there *are* no participants now—no "eligible employees," the term used in the Trust Agreement—there could be a serious question whether UAW (if it therefore cannot fairly demand distribution to the individuals whom it represented in the past) is in a "case or controversy" posture to support Article III jurisdiction. As is implied by the Opinion, however, this Court has assumed that UAW's advancing of a claim to distribution on behalf of the formerly eligible employees was enough to avoid any such problem.

3. Section 1002(8) defines "beneficiary" this way:
   a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder.
   Though Section 1002(9) follows the conventional practice of defining "person" in an all-inclusive way, embracing legal entities such as corporations as well as individuals, it remains an impermissible stretch to link those two definitions to put Ready Metal into the "beneficiary" category under the Trust Agreement. Apart from the strain that would impose on the English language, it should not be forgotten that a large part of the controversy here stems from the fact the Trust Agreement says *nothing* about any Trust funds being paid to Ready Metal under any contingency.

So much, then, for ERISA as a putative source of jurisdiction here. It is time to turn to Section 301, an area as to which UAW has joined in Ready Metal's supplemental memorandum and has added some arguments of its own.[4]

Both UAW and Ready Metal point to a number of cases that construe "contract" for Section 301 purposes in a broader sense than embracing collective bargaining agreements alone. This Court of course has no quarrel with that proposition—in fact, Opinion at 11 assumed as much with respect to the Trust Agreement. But where both counsel's arguments must be found wanting is in their glossing over the scope of Section 301's conferral of federal jurisdiction—it is limited to "[s]uits for *violation* of contracts between an employer and a labor organization" (emphasis added).

UAW attempts to call to its aid this principle from *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 220, 105 S.Ct. 1904, 1916, 85 L.Ed.2d 206 (1985):

> We do hold that when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, see *Avco Corp. v. Aero Lodge 735,* 390 U.S. 557[, 88 S.Ct. 1235, 20 L.Ed.2d 126] (1968), or dismissed as pre-empted by federal labor-contract law.

But *Allis–Chalmers* involved a claimed *violation* of a labor contract: the breach by the employer of the express or implied contract provision to provide payments to its disabled employees in a timely manner (*id.*

at 215–16, 105 S.Ct. at 1913).[5] Nothing in the Supreme Court's decision or in its language suggests that a suit such as this one, involving no asserted violation at all, is magically converted into a Section 301 claim merely because the contracting parties include an employer and a labor organization. That is a necessary but not a sufficient condition for the application of Section 301.

### Conclusion

Nothing in the parties' responses calls for reconsideration of the conclusion or result reached in the Opinion. This Court's order for prompt remand of this action stands.[6]

---

**4.** Ready Metal's brief memorandum does not rely on ERISA as a jurisdictional source at all.

**5.** That is equally true of the cases UAW Mem. 9 cites for the proposition that Section 301 authorizes actions for declaratory relief—another irrelevancy, for in each instance the declaration sought by the plaintiff implicated a claimed *violation* of the contract at issue. Finally, the identical proposition vitiates the two cases cited by Ready Metal—they simply hold that a pension plan may qualify as a "contract" for Section 301 purposes, but in each case the defendant was charged with a *violation* of such a contract.

**6.** Although Opinion at 341 plainly instructed the Clerk of this District Court to delay mailing the certified copy of the remand order until today, this Court has been advised that a clerical error resulted in the remand being implemented as soon as the Opinion was issued. If the litigants' submissions had occasioned a reconsideration of the Opinion, it would have been necessary to confront the mechanics of recalling an improvidently-remanded case (a real variant on the old Section 1447(c) standard of improvidently *removed* cases). In light of the conclusion reached in this supplement, however, that question is moot.