In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 02-1984 and 02-2489

SOUTHERN ILLINOIS CARPENTERS WELFARE FUND, *et al.*,

*Plaintiffs-Appellants,*

v.

CARPENTERS WELFARE FUND OF ILLINOIS, *et al*,

*Defendants-Appellees.*

Appeals from the United States District Court
for the Central District of Illinois.
No. 01-C-3337—**Jeanne E. Scott**, *Judge.*

ARGUED JANUARY 17, 2003—DECIDED APRIL 22, 2003

Before BAUER, POSNER, and EVANS, *Circuit Judges.*

POSNER, *Circuit Judge.* The plaintiffs in this ERISA suit are former participants in the welfare plan of the Carpenters Welfare Fund of Illinois, their union, the association of their employers, and the new welfare fund that the union and the employers' association formed when they broke away from the Carpenters Welfare Fund. The plaintiffs are suing the Fund (and others who need not be discussed separately) for the value of "banked hours" that the union's members left in the Fund when they broke away in 1994. The district court dismissed the suit for lack of subject matter jurisdiction, and the plaintiffs appeal.

The Fund is a multiemployer ERISA welfare fund administered by a board of trustees composed of representatives of employers and unions. To qualify for benefits, a plan participant must work 200 hours each quarter. If he exceeds that number in some quarter, he can place the surplus hours in the plan's "hour bank" and withdraw them later to maintain eligibility for benefits in any quarter in which he fails to work 200 hours, except that his "bank account" may not exceed 1600 hours. The plan is explicit that a participant who quits the plan forfeits all his rights as a participant. Unlike benefits under an ERISA pension plan, benefits under an ERISA welfare plan do not vest automatically after a given period of time, *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995); *Bidlack v. Wheelabrator Corp.*, 993 F.2d 603, 604-05 (7th Cir. 1993) (en banc) (plurality opinion), though of course the plan can provide for vested or perpetual benefits, *id.* at 605; *Pabst Brewing Co. v. Corrao*, 161 F.3d 434, 439 (7th Cir. 1998)—which this one, however, emphatically does not do. Among the benefits forfeited by the terms of the plan are the quitting participants' accounts in the hour bank. The reason the plaintiffs are seeking the value of the hours rather than the hours themselves is that having quit the plan they are entitled to no benefits under it. They want the value of their hours so that they can buy welfare benefits elsewhere.

The provision of ERISA under which the plaintiffs sued limits the right to sue to plan participants and beneficiaries. 29 U.S.C. § 1132(a)(1). Since employers are neither, *Giardono v. Jones*, 867 F.2d 409, 412-13 (7th Cir. 1989), the employers' association cannot sue. The union is suing as the representative of its members, but before considering their right to sue let us consider briefly whether an association can sue on their behalf. An oldish case of ours, *International Ass'n of Bridge, Structural & Ornamental Iron Workers*

*Local No. 111 v. Douglas*, 646 F.2d 1211, 1214 (7th Cir. 1981), authorized such a representative suit, though without explaining the basis for such authorization. See also *Communications Workers of America v. American Tel. & Tel. Co.*, 40 F.3d 426, 434 n. 2 (D.C. Cir. 1994). *New Jersey State AFL-CIO v. New Jersey*, 747 F.2d 891, 892-93 (3d Cir. 1984), holds the contrary, however, and *Giordano v. Jones, supra*, a later decision by this court, without citing the *Douglas* case, casts doubt on its continuing vitality by holding that employers may not sue under ERISA because the statute does not authorize them to sue. See also *Stone & Webster Engineering Corp. v. Ilsley*, 690 F.2d 323, 326 (2d Cir. 1982); *County, Municipal Employees' Supervisors & Foreman's Union Local No. 1001 v. Laborers' Pension Fund*, 240 F. Supp. 2d 827, 828-31 (N.D. Ill. 2003). Nor does it authorize associations to sue. Yet associations have standing to sue in the Article III sense on behalf of their members, *Warth v. Seldin*, 422 U.S. 490, 511 (1975), and Fed. R. Civ. P. 23.2 authorizes unincorporated associations, such as unions, see *Cook County College Teachers Union, Local 1600 v. Byrd*, 456 F.2d 882, 886 n. 2 (7th Cir. 1972); *In re IBP Confidential Business Documents Litigation*, 491 F. Supp. 1359, 1360 (J.P.M.L. 1980), to bring a form of class action on behalf of their members. That is an apt description of the present suit. Congress can withdraw the right to sue, of course, but with all due respect to the contrary view of the Third Circuit, we do not think that by confining the right to sue under section 1132(a)(1) to plan participants and beneficiaries Congress intended to prevent unions from suing on behalf of participants. The union in such a case is not seeking anything for itself; the real plaintiffs in interest are plan participants.

The new welfare fund, the one formed by these breakaway employers and workers, is an ERISA fiduciary and a breach of fiduciary duty is an express basis for an ERISA suit. 29 U.S.C. §§ 1109(a), 1132(a)(2); see *Peoria Union Stock Yards Co. Retirement Plan v. Penn Mutual Life Ins. Co.*, 698

F.2d 320, 326 (7th Cir. 1983). But neither the old fund nor any other defendant has any fiduciary duty toward the new fund. And, speaking of defendants, the plaintiffs' claim against a lawyer for the old fund fails because he was not an ERISA fiduciary; he did not control the fund. See *Pappas v. Buck Consultants, Inc.* 923 F.2d 531, 538 (7th Cir. 1991). Nor could he be sued for plan benefits, under 29 U.S.C. § 1132(a)(1), as he is not the plan or the plan's administrator.

Thus the critical question, so far as jurisdiction is concerned, is whether the union's members are plan participants; if not, the suit fails regardless of its merit or lack thereof because none of the other plaintiffs is eligible to sue except the union, and its right to sue is derivative from that of the union's members. The plan confers certain rights on "ineligible participants," but the reference is to participants in the plan who are ineligible for benefits for one reason or another, not to former participants. ERISA defines "participant," however, to include not only a current employee but also a former one, provided that he "is or may become eligible to receive a benefit." 29 U.S.C. § 1002(7). The Supreme Court has held that "may become" means has "a colorable claim to vested benefits," *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117 (1989), and a colorable claim is merely one that is not frivolous. *Neuma, Inc. v. AMP, Inc.*, 259 F.3d 864, 878-79 and n. 11 (7th Cir. 2001); *Davis v. Featherstone*, 97 F.3d 734, 737-38 (4th Cir. 1996). Thus a former participant in an ERISA plan may sue for vested benefits, though, as with any plaintiff, if his claim is frivolous his suit will be dismissed for failure to invoke the jurisdiction of the federal court. *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 70-71 (1978); *Walters v. Edgar*, 163 F.3d 430, 433 (7th Cir. 1998).

The district court thought that the employee plaintiffs in this case did not have even a colorable claim, because the

plan is explicit that employees who quit the plan have no remaining rights under it, including rights to banked hours. It makes no practical difference, however, whether the plaintiffs lack a colorable claim or merely lack a good claim; either way they lose. They make a number of arguments in an effort to overcome the language of the plan, though only two have enough merit to warrant discussion. They point out that when someone leaves the plan but later returns to it, the plan restores the banked hours that he forfeited when he left. They think this shows that banked hours are vested benefits. It does not. The practice to which they refer is an inducement to former participants to return; but what these plaintiffs seek is not that, but instead a cash payout for leaving.

So the plaintiffs cannot base their claim on the terms of the plan. But they point out that prior to quitting it their employers and their union had asked the plan's trustees to amend it to permit departing participants to take the monetary value of their hours with them. In accordance with the provisions of the plan relating to amendments, the request was submitted to the plan's trustees, consisting of union and employer representatives, for a vote. The trustees first decided, on the advice of the plan's lawyer (the lawyer whom the plaintiffs joined as a defendant), that the trustees who had been appointed by the departing employers and union could not vote on the proposed amendment. The vote was then taken and the union trustees voted for it but the employer trustees voted against it, producing a deadlock (the plan gives equal votes to employer and union trustees even when, as in this case, there are uneven numbers voting). The matter was referred to arbitration, as provided by the plan. The arbitrator ruled that the plan should not be amended to permit employees quitting the plan to take the value of their banked hours.

The plaintiffs complain about the exclusion of their representatives from the decisionmaking process in the board of trustees and about the vote of the (truncated) board against the proposed amendment. They also argue that the arbitrator had no authority to rule on proposed amendments. The last argument gets them nowhere, since if accepted it would mean that the vote on their proposal was an unbreakable tie, constituting therefore a definitive rejection of the proposal. As for the complaint about the board's procedural decision to exclude the "interested" trustees, the decision does seem very peculiar, since the remaining trustees were just as interested in the outcome, and the vote stripping could be regarded as a breach of fiduciary duty to the employers and union whose representatives were excluded. It is fundamental that "when there are two or more beneficiaries of a trust, the trustee is under a duty to deal impartially with them." *Restatement of Trusts (Second)* § 183 (1959); *White Mountain Apache Tribe v. United States*, 249 F.3d 1364, 1379 (Fed. Cir. 2001); for the application of this principle to ERISA, see 29 U.S.C. § 1104(a)(1)(B); *First National Bank v. A.M. Castle & Co. Employee Trust*, 180 F.3d 814, 817 (7th Cir. 1999); *Summers v. State Street Bank & Trust Co.*, 104 F.3d 105, 108 (7th Cir. 1997); *Morse v. Stanley*, 732 F.2d 1139, 1145 (2d Cir. 1984). But this claim is barred by the three-year statute of limitations applicable to claims of breach of fiduciary duty under ERISA. 29 U.S.C. § 1113(2).

As for whether the vote itself, turning down the proposed amendment, violated ERISA, the argument that it did assumes that the plaintiffs had no vested benefits under the plan—otherwise they wouldn't have needed an amendment. ERISA confers no enforceable right to amend a plan (as opposed to an enforceable right to benefits due) unless refusal to amend would be a breach of the trustee's fiduciary duties and thus be actionable under 29 U.S.C.

§ 1109; cf. *Joseph v. New Orleans Electric Pension & Retirement Plan,* 754 F.2d 628, 630 (5th Cir. 1985). The qualification is potentially significant. Although the cases say that plan amendments are not actions to which ERISA's fiduciary obligations attach, *Hughes Aircraft Co. v. Jacobson,* 525 U.S. 432, 443-45 (1999); *Lockheed Corp. v. Spink,* 517 U.S. 882, 890-91 (1996); *Johnson v. Georgia-Pacific Corp.,* 19 F.3d 1184, 1188 (7th Cir. 1994), and this is a valid generalization, one must always be cautious about inferring a flat rule from the general language in a judicial opinion. The principle for which the cases that we have just cited stand—that since an employer has no duty to create a pension or welfare plan in the first place, neither does he have a duty to amend it to make it more generous, or a duty not to amend it if the amendment would make it less generous—does not bear on a case in which amending a plan in a certain way would operate as a breach of the plan's fiduciary obligations because it wiped out vested benefits. See *Gluck v. Unisys Corp.,* 960 F.2d 1168, 1178 (3d Cir. 1992). We have greater difficulty imagining cases in which a refusal to amend could be a breach of fiduciary duty. But at any rate this is not such a case. If anything, for the trustees to have voted to cash out departing members would have violated their fiduciary duty to the remaining members, as it would have transferred wealth from them to the departing members for no reason that we can glean from the record. In any event, this claim of breach of fiduciary duty is also barred by the three-year statute of limitations.

AFFIRMED.

A true Copy:

       Teste:

                         _____
                         *Clerk of the United States Court of*
                         *Appeals for the Seventh Circuit*