OPINION OF THE COURT
John M. Curran, J.
This matter arises out of the settlement of a federal court action brought by employee beneficiaries of the employee stock option plan (ESOP) of the now-defunct Azon Corporation. Three years before Azon filed for bankruptcy protection, the controlling shareholders, individual plaintiffs herein, sold their stock to the ESOP for $25 million, financed through a loan procured by Azon. Defendant Bond, Schoeneck& King, PLLC was named counsel to the ESOP in the transaction; and Henry J. Rode II, a partner in defendant Coughlin & Gerhart LLR served as longtime corporate counsel to Azon. After the bankruptcy filing, employee beneficiaries sued these plaintiffs in an action in federal district court. The Azon employee beneficiaries contended that the stock was overvalued and that these plaintiffs were liable for the amount of the overvaluation and to return the proceeds of the sale to the ESOP
*815 While the federal court action was pending, several of these plaintiffs executed agreements with defendant law firms purporting to toll the statute of limitations on causes of action against them. In November 2005, these plaintiffs settled the federal court action and, in December of that year, filed this lawsuit, in which they seek to recover from defendants the monies paid in settlement.
The case came before the court upon preanswer motions to dismiss by defendants pursuant to CPLR 3211 (a) (1), (5), and (7). Upon due consideration, the court grants the motion of Bond, Schoeneck & King, PLLC insofar as it seeks to dismiss the first cause of action by HSBC and the third cause of action in its entirety, but otherwise denies the motion. The court grants the motion of Coughlin & Gerhart LLP insofar as it seeks to dismiss the first cause of action by HSBC, the second cause of action as asserted by Nicole Bordages and John Bordages only, and the fourth cause of action as asserted by HSBC, Nicole Bordages and John Bordages only, but otherwise denies the motion.
Background
Azon was a New York corporation that manufactured wide format coated papers and films for use in the reprographics industry (amended complaint 1Í 25). It established an employee stock option plan in 1989. Azon made contributions to the ESOP and, at that time, the ESOP acquired 19% of Azon’s stock (amended complaint lili 26-27). The remaining outstanding and issued stock, as of 1998, was owned by plaintiffs Janet S. Bordages, John E Bordages, Nicole L. Bordages, James G. Bannon, William H. Bannon, and Judith B. Ballew (hereinafter selling shareholders). With the exception of Nicole Bordages and John Bordages, as of 1998, the other individual plaintiffs were members of the board of directors (amended complaint 1Í15).
In 1998, Azon was involved in merger discussions with another corporation. At the time, the president and chief executive officer of Azon was William Bordages (Bill Bordages). In addition, Bill Bordages was a member of the Azon board of directors (amended complaint 1Í1Í 28, 34). James L. Donovan was Azon’s treasurer and chief financial officer (id. H 29). During 1998 and early 1999, Mr. Donovan also acted as the trustee for the ESOP (id.).
On March 2, 1998, Bill Bordages and Mr. Donovan entered into employment agreements with Azon under which each would become entitled to a “retention bonus” upon a change in control *816 of the corporation — for example, through a merger. The employment agreements provided, in pertinent part:
“4. Retention Bonus. In the event the company, or a majority of its shareholders determine to engage in the negotiation or execution of an Agreement, the objective of which is a Change in Control of the Company and the said arrangement is ultimately achieved, the Company shall, provided the employee fully supports and assists in the implementation of the process, pay to the Employee at or before closing a bonus equal to the annual salary of the Employee.” (Amended complaint ¶ 31.)
At the time of the ESOP transaction, Bill Bordages’ annual salary was $500,000 and Mr. Donovan’s was $125,000 (amended complaint ¶ 32). Thus, if Bill Bordages and Mr. Donovan assisted in the merger or other transaction resulting in a change in control of the corporation, they would receive a large payout upon its completion.
In connection with the proposed merger, Bond, Schoeneck & King, PLLC (hereinafter BS&K) was retained, at Azon’s expense, to represent the ESOP According to the amended complaint, BS&K represented to Azon that the firm had expertise in the law concerning ESOPs, the Employee Retirement Income Security Act (ERISA) and “the representation of individuals in connection with the sale of their stock to ESOPs” (amended complaint ¶ 35). A letter was sent to Mr. Donovan and Mr. Rode, the Coughlin & Gerhart LLP (hereinafter C&G) lawyer who served as corporate counsel, from Richard Hole, a partner at BS&K, in which Mr. Hole advised concerning “prohibited transactions” under ERISA and the potential impact of change-in-control bonuses (amended complaint ¶¶ 35-39).
After the merger failed to go through, according to plaintiffs, executives at Azon asked BS&K to advise them on structuring a transaction that would involve the creation of a second ESOP to take out a loan and purchase a substantial number of shares of Azon held by the selling shareholders (amended complaint ¶ 41). Ultimately, it was determined to have the selling shareholders sell those shares to the existing ESOP (amended complaint ¶ 41).
Azon chose M&T Bank as its lender in August 1999; HSBC was selected for the position of directed trustee of the ESOP (see 29 USC § 1103 [a] [1]), and BS&K was hired by Azon “as *817 the sole ERISA counsel” to act as counsel to the ESOP (amended complaint ¶¶47-48, 55-56). On August 27, 1999, M&T sent a commitment letter to Mr. Donovan, who provided copies to Stephen Daley, an attorney at BS&K, and to Mr. Rode (amended complaint ¶ 58; exhibit D). According to the amended complaint, although C&G reviewed the M&T loan documents and prepared an opinion letter with respect to the loan to Azon, BS&K “failed or refused” to review the documents involved or to attend the closing (amended complaint ¶¶67-68).
Mr. Rode arranged for a meeting of Azon’s shareholders and directors on September 21, 1999 in order to close on the transactions (id. ¶ 70). At that meeting, Mr. Donovan was appointed to serve as the “ESOP Committee,” with the authority to direct ESOP investments, and directed HSBC to close the ESOP transaction (amended complaint ¶ 88). According to the minutes of the meeting, Mr. Rode also advised the shareholders and directors about the ESOP transaction and expressed opinions about the closing documents (amended complaint ¶ 70). In addition, amendments to the employment agreements were executed permitting payment of the change-in-control bonuses to Bill Bordages and Mr. Donovan (id. ¶¶ 71, 73). The loan documents permitted Azon to pay up to a million dollars in change-in-control bonuses at the time of the closing of the ESOP transaction, the remaining one million dollars to be deferred (amended complaint exhibit D at 4).
According to plaintiffs, BS&K prepared an opinion letter, dated September 21, 1999, for Mr. Donovan to provide to BS&K and C&G, in which Mr. Donovan was asked to certify the truth of certain legal conclusions pertinent to the ESOP transaction, including that “[n]o commissions or other consideration of any kind will be paid or given to any individual ... in connection with the Loan and subsequent purchase by the ESOP” of the stock (amended complaint ¶ 77; exhibit G).
Also in connection with the transaction, BS&K issued an opinion letter directed to HSBC on behalf of the ESOP (amended complaint ¶ 81; exhibit H). In the letter, BS&K gave its opinion that “execution, delivery and performance of the Transaction Documents and the consummation of the transactions therein contemplated do not and will not constitute a nonexempt ‘prohibited transaction’ ” under ERISA or the Internal Revenue Code (id. exhibit H at 2).
C&G also issued two opinion letters, one to M&T and one to HSBC, concerning the loan transactions and the transfers of *818 shares (amended complaint ¶¶ 86-87; exhibits I, J). C&G opined that Azon’s execution of the loan transaction and the other transaction documents did not “violate any provision of law or regulation” (id., exhibit I at 2; see also id., exhibit J at 3).
Thus, the selling shareholders received a total of $25 million among them, and the ESOP ended up with the right to obtain the shares, as Azon paid down the loan. Unfortunately, Azon’s business failed over the next three years.
Procedural History
In July 2002, Azon filed a voluntary petition in bankruptcy (amended complaint 1i 89). Later in 2002, a number of former Azon employees and ESOP participants sued HSBC, the ESOR the selling shareholders and the other directors who approved the transaction (amended complaint ¶ 90; see Gluckow affirmation, exhibit C; Beam et al. v HSBC Bank USA et al. [Civ action No. 02-CF-0682E] [amended class action complaint hereinafter referred to as the Beam action and the Beam amended complaint]). The Beam action was filed in the United States District Court for the Western District of New York and assigned to Judge Elfvin.
The Beam plaintiffs alleged, in brief, that plaintiffs herein breached their fiduciary duties by authorizing the sale of and selling their stock for an excessive price, and also by causing Azon to take on more debt than it could service, thereby destroying the value of both the newly-acquired shares and the shares already owned by the ESOP The Beam plaintiffs further alleged that HSBC failed to properly carry out its duties as trustee (Beam amended complaint ¶ 1). However, the Beam plaintiffs asserted no causes of action based on the payment of change-in-control bonuses to Bill Bordages and Mr. Donovan (see BS&K brief at 7). Further, no causes of action were asserted against BS&K or C&G.
Plaintiffs contend that the law firms were not sued by the Beam plaintiffs because the “peculiarities of ERISA” did not authorize direct causes of action by the employee beneficiaries of the ESOP against the law firms for breach of fiduciary duty (see plaintiffs’ brief at 11). This is consistent with Department of Labor regulations (29 CFR 2509.75-5 [D-l]) and the cases from federal circuit courts of appeal which hold that attorneys are not ordinarily fiduciaries unless they give investment advice or have special authority over plan management (see e.g. Gerosa v Savasta & Co., Inc., 329 F3d 317, 321 [2d Cir 2003]; Southern *819 Ill. Carpenters Welfare Fund v Carpenters Welfare Fund of Ill., 326 F3d 919, 922 [7th Cir 2003]; Painters of Phila. Dist. Council No. 21 Welfare Fund v Price Waterhouse, 879 F2d 1146, 1150 [3d Cir 1989]). The Beam amended complaint added Mr. Rode as a defendant but in his role as a member of the board of directors (see Beam amended complaint ¶ 30), and neither the Beam plaintiffs nor the plaintiffs here have ever alleged that BS&K or C&G have fiduciary liability under ERISA.
In 2003, Judge Elfvin certified the Beam class and issued a decision in which he considered a motion by HSBC for summary judgment dismissing the complaint as against it (see Beam v HSBC Bank USA, 2003 WL 22087589, 2003 US Dist LEXIS 15744 [WD NY, Aug. 19, 2003]). According to Judge Elfvin, the Beam plaintiffs alleged that HSBC had violated its fiduciary duty “by permitting the Stock Sale to close without having conducted an adequate investigation” (Beam, 2003 WL 22087589, *1, 2003 US Dist LEXIS 15744, *4). Judge Elfvin denied HSBC’s motion for summary judgment on the grounds that, first, no discovery had yet taken place and, second, there were genuine issues of material fact whether Mr. Donovan’s direction to HSBC to complete the stock sale was contrary to ERISA (Beam, 2003 WL 22087589, *2, 2003 US Dist LEXIS 15744, *7). In addition, Judge Elfvin noted that the Beam plaintiffs had “adequately” alleged that HSBC could be liable as a cofiduciary if it “either participated in or knew or should have known that Donovan was breaching his fiduciary duty but failed to remedy such violation” (Beam, 2003 WL 22087589, *3, 2003 US Dist LEXIS 15744, *10, citing 29 USC § 1105 [a]).
After the filing of an amended complaint in the Beam action, the parties participated in mediation (amended complaint ¶ 100). The case was settled, and a settlement agreement was submitted to the federal court for approval in May 2005 (see Gluckow affirmation, exhibit E). Pursuant to the settlement agreement, the selling shareholders paid the Beam plaintiffs $8,850,000 and HSBC paid $500,000 (amended complaint ¶¶ 7-8). The order and final judgment issued by Judge Elfvin found, inter alia, that the amount of the settlement was “fair, reasonable and adequate” and noted that the expert hired by the named plaintiffs estimated that the “theoretical maximum recovery in [the Beam action would have been] less than $15 million” (Lindquist affirmation, exhibit D at 8 [order signed Nov. 21, 2005]).
Thus, the Beam action was filed, litigated and settled without any party suing BS&K or C&G, although a third-party complaint *820 impleading the two firms was drafted and circulated to them (see Lindquist affirmation, exhibit E). In addition, the selling shareholders have agreements tolling the running of the statute of limitations on their causes of action against BS&K and C&G for certain periods of time (see Africano affidavit, exhibit J).
The Instant Action
The instant action was filed on December 1, 2005 and an amended complaint was served in March 2006 (see Lindquist affirmation 1i 3). The first cause of action in the amended complaint, asserted against both defendants, seeks recovery of the settlement amount plus attorneys’ fees and costs, under a theory of implied indemnification. The second cause of action, brought by the individual plaintiffs in their capacity as selling shareholders, alleges legal malpractice by C&G, in that C&G failed to conduct the due diligence necessary to express a valid opinion on the propriety and the legality of the ESOP transaction. The third cause of action, brought on behalf of all plaintiffs, alleges negligent misrepresentation by BS&K concerning its role as an ERISA expert, in the advice that it gave, in the giving of its opinion letter and the actions that it took or failed to take with respect to the transaction, asserting that the parties to the transaction would not have proceeded with the transaction had BS&K not issued its opinion letter. The fourth cause of action is similarly based in negligent misrepresentation and asserted against C&G.
Both defendants moved to dismiss the complaint, and oral argument was held before Judge Fahey on November 21, 2006. However, Judge Fahey was elevated to the Appellate Division before entering a decision, and the case was transferred to this court. The parties opted to hold oral argument again, and this decision follows.
Discussion
A. Standard of Review
With respect to a motion to dismiss for failure to state a claim, the Court of Appeals recently stated:
“When assessing the adequacy of a complaint in light of a CPLR 3211 (a) (7) motion to dismiss, the court must afford the pleadings a liberal construction, accept the allegations of the complaint as true and provide plaintiff . . . ‘the benefit of every pos *821 sible favorable inference’ (Leon v Martinez, 84 NY2d 83, 87 [1994] . . . ). ‘Whether a . . . plaintiff can ultimately establish its allegations is not part of the calculus in determining a motion to dismiss’ (EBC I, Inc. v Goldman, Sachs & Co., 5 NY3d 11, 19 [2005]). Further, any deficiencies in the complaint may be amplified by supplemental pleadings and other evidence (see Rovello v Orofino Realty Co., 40 NY2d 633, 635-636 [1976]).” (AG Capital Funding Partners, L.P. v State St. Bank & Trust Co., 5 NY3d 582, 591 [2005]).
The inquiry is limited to whether a plaintiff has a cause of action, not whether he has stated one (see Rovello, 40 NY2d at 636). Defendant C&G has also moved to dismiss the complaint pursuant to CPLR 3211 (a) (1) on the basis of documentary evidence. That basis for dismissal is inapplicable here because there is no conclusive documentary evidence (see AG Capital Funding Partners, L.P., 5 NY3d at 590-591).
B. First Cause of Action: Implied Indemnification
Plaintiffs’ Allegations
Plaintiffs, comprised of HSBC and the individual plaintiffs in their capacity as selling shareholders, allege in the first cause of action that both defendants are liable to them under a theory of implied indemnity. The selling shareholders claim entitlement to indemnification on the basis that they were liable to the Beam plaintiffs solely because they were interested parties to a prohibited transaction (see plaintiffs’ brief at 14; see also amended complaint ¶¶ 104-105). The selling shareholders also allege that the law firms should be estopped from claiming that plaintiffs’ positions as fiduciaries bar them from seeking indemnification, because plaintiff shareholders would never have participated in the leveraged ESOP transaction as directors had they been properly advised by the law firms, and therefore could have avoided any fiduciary role in the transaction. As discussed below, the court need not reach that issue. At oral argument, HSBC contended (although it filed no separate papers) that it was entitled to indemnification against the defendant law firms because it did not breach its fiduciary duty, and it was liable to the Beam plaintiffs only because it was misled by these defendants’ opinion letters into agreeing to close the transaction.
*822 Plaintiffs’ Alleged “Prohibited Transaction” Per Se Liability
Absent certain exemptions, section 406 (a) (1) (B) of ERISA prohibits plan fiduciaries from causing a plan (here, the ESOP) to engage in any transactions or loans between it and a “party in interest” (see 29 USC § 1106 [a] [1] [A], [B]), the term “party in interest” including the employer or any officer or director of that employer (see 29 USC § 1002 [14] [C], [H]). Exemptions are provided under section 408 of ERISA (29 USC § 1108), which include those involving:
“the acquisition ... by a plan of qualifying employer securities (as defined in section 1107(d)(5) of this title) . . .
“(1) if such acquisition ... is for adequate consideration . . . ,
“(2) if no commission is charged with respect thereto, and
“(3) if—
“(A) the plan is an eligible individual account plan (as defined in section 1107(d)(3) of this title)” (29 USC § 1108 [e] [emphasis supplied]; see also 29 USC § 1107 [d] [3] [A] [ii]).
Here, the selling shareholders allege that the change-in-control bonuses paid to Bill Bordages and Mr. Donovan by Azon were “commissions” under section 1108 (e) (2), rendering the transaction a prohibited transaction (see 29 CFR 2550.408e [e] [defining “commission” under section 1108 (e)]). As parties in interest, the selling shareholders were subject to per se liability under ERISA if the ESOP transaction was deemed prohibited, regardless of whether they breached any duty of care (see plaintiffs’ brief at 14, citing 29 USC § 1132 [a] [3]; see Chao v Hall Holding Co., Inc., 285 F3d 415, 442 n 12 [6th Cir 2002] [discussing per se liability under 29 USC § 1132 (a) (3) and § 1106], cert denied 537 US 1168 [2003]).
Although the case law is divided, the majority of courts have determined that no subjective intent or finding of injury is required for a finding of liability due to participation in a prohibited transaction (see Chao, 285 F3d at 442 n 12). In their amended complaint, plaintiffs allege:
“[the defendant law firms] were responsible for determining whether there was a legal risk that the ESOP Transaction would be deemed a prohibited transaction under ERISA and the Code. BS&K and C&G have been unjustly enriched because the Sell *823 ing Shareholders have been forced to pay settlement amounts and incur legal expenses in the Beam action when the law firms were at fault because their acts and omissions created an unreasonable risk that the transaction would be deemed to be prohibited under ERISA and the Code” (amended complaint 1i 106 [emphasis supplied]).
Thus, although the selling shareholders concede that four of them were fiduciaries and would have been liable if the share price had been found to be excessive, they claim that the main reason they settled the Beam action was to avoid having the Beam plaintiffs succeed in establishing that the transaction was prohibited, leaving the selling shareholders potentially liable for rescission of the transaction, repayment of the $25 million and payment in addition under Internal Revenue Code (26 USC) § 4975 of up to 100% of that amount as an excise tax.
Plaintiffs assert that this potential for prohibited transaction per se liability “caused staggering implications” in the Beam litigation and that: “[t]he granting of the bonus claim made it imperative that HSBC and the Selling Shareholders pursue a comprehensive settlement of the bonus claim” (plaintiffs’ brief at 5). Plaintiffs allege that they confirmed their concerns with the Department of Labor (anonymously) and with independent counsel. Plaintiffs elected to settle with the Beam plaintiffs before the bonus claim was fully exposed to discovery and before commencing a third-party action against the defendants in the Beam action under Federal Rules of Civil Procedure rule 14. Obviously, plaintiffs did so to avoid having the bonus claim increase the amount of the settlement. Nevertheless, plaintiffs invited defendants to participate in the settlement of the Beam action, including by bringing to defendants’ attention the per se liability theory (see Lindquist affirmation, exhibit E). Defendants declined to participate, the Beam action settled, and this action ensued.
The Motions
Defendants move to dismiss the first cause of action primarily on the grounds that it seeks contribution, rather than indemnification, and is precluded under General Obligations Law § 15-108 (c), which provides that “[a] tortfeasor who has obtained his own release from liability shall not be entitled to contribution from any other person.” Secondly, defendants allege that a cause of action for implied indemnification cannot stand if plaintiffs have any responsibility for the purported harm to the *824 Beam plaintiffs (see BS&K brief at 12-13, citing e.g. Rosado v Proctor & Schwartz, 66 NY2d 21, 24-25 [1985]; see also C&G brief at 12-13). In addition, defendants contend that plaintiffs cannot recover based upon a cause of action that was neither pleaded nor prosecuted against them by the Beam plaintiffs (see BS&K brief at 12, citing Midura v 740 Corp., LLC, 31 AD3d 401, 402 [2d Dept 2006]; see also C&G brief at 12). Finally, defendants allege that the bonuses paid to Azon executives in connection with the ESOP did not as a matter of law render the transaction prohibited under ERISA because the bonuses were paid by the employer, Azon, and not by the ESOP
Applicable Law
Because plaintiffs’ liability under Beam stemmed from ERISA, the initial question, not directly addressed by the parties, is whether the viability of a claim for indemnification should be determined by reference to federal or New York law. The parties primarily cite New York law in analyzing whether plaintiffs may assert such a claim (see BS&K brief at 11-18; C&G brief at 11-13; plaintiffs’ brief at 14-23).
This court is bound to apply United States Supreme Court precedent in ERISA cases as well as precedent from the lower federal courts to the extent that such precedent is in agreement (see Flanagan v Prudential-Bache Sec., 67 NY2d 500, 506 [1986], cert denied 479 US 931 [1986]). Where there is a split in authority among the lower federal courts, however, “a State court required to interpret [a] Federal statute has the same responsibility as the lower Federal courts and is not precluded from exercising its own judgment or bound to follow the decision of the Federal Circuit Court of Appeals within the territorial boundaries of which it sits” (id. [citations omitted]). Thus, this court’s analysis should be no different than if the third-party action in the Beam action had been commenced (which sought both contribution and indemnification), except to separately analyze the effect, if any, the settlement has on plaintiffs’ rights to claims for contribution and indemnification.
The United States Supreme Court has not yet addressed the issue of which body of law to apply in the instant situation (see e.g. Donovan v Robbins, 752 F2d 1170, 1178-1181 [7th Cir 1985]; see also McDannold v Star Bank, N.A., 261 F3d 478, 484-485 [6th Cir 2001]). Because ERISA is a federal statute which explicitly preempts state law (see 29 USC § 1144 [a]), and preemption doctrines apply in state courts as well as in federal *825 courts (see Doe v HMO-CNY, 14 AD3d 102, 107 [4th Dept 2004]), this court will apply federal common law in deciding whether the General Obligations Law and its ban on contribution for settling tortfeasors bars plaintiffs’ first cause of action (see generally Chemung Canal Trust Co. v Sovran Bank/ Maryland, 939 F2d 12, 16 [2d Cir 1991] [“(t)he Supreme Court has left no doubt that ‘courts are to develop a “federal common law of rights and obligations under ERISA-regulated plans” ’ ” (quoting Firestone Tire & Rubber Co. v Bruch, 489 US 101, 110 [1989])], cert denied 505 US 1212 [1992]). The Second Circuit has determined: “We believe that Congress intended us to fill the interstices of ERISA’s statutory scheme and that a necessary corollary of our decision in Chemung that indemnity and contribution exist under ERISA is that federal common law governs what is permissible in a settlement of ERISA claims” (In re Masters Mates & Pilots Pension Plan & IRAP Litig., 957 F2d 1020, 1027 [2d Cir 1992]).
There is a split among the federal circuits as to whether there is a right to contribution and indemnity between fiduciaries under ERISA (see generally 1A Couch on Insurance 3d § 7:12 [collecting cases]; compare Chemung Canal Trust Co., 939 F2d at 15 and Lumpkin v Envirodyne Indus., Inc., 933 F2d 449, 464 [7th Cir 1991], cert denied 502 US 939 [1991] with Kim v Fujikawa, 871 F2d 1427, 1432-1433 [9th Cir 1989]; Site-Blauvelt Engrs., Inc. v First Union Corp., 153 F Supp 2d 707, 709-710 [ED Pa 2001] [Second Circuit recognizes contribution and indemnification claims under ERISA, while Ninth Circuit and several district courts do not]). The Supreme Court has held that, in developing federal common law under ERISA, courts must be guided by the principles of trust law (see Harris Trust & Sav. Bank v Salomon Smith Barney Inc., 530 US 238, 250 [2000]). The Second and Seventh Circuit Courts of Appeals have held that, because traditional trust law provides for a right of contribution among “defaulting fiduciaries,” the doctrines of contribution and indemnity should be available between cofiduciaries under ERISA (see Chemung, 939 F2d at 16; see also Free v Briody, 732 F2d 1331, 1337 [7th Cir 1984] [accord]).
However, the instant case involves fiduciaries under ERISA seeking indemnification against nonfiduciaries, i.e., the defendant law firms. Among the federal courts that recognize a right to contribution and indemnity under ERISA, there is further disagreement whether such rights exist between a fiduciary and a nonfiduciary, either because of the nonfiduciary’s participa *826 tion in a fiduciary breach or participation in a prohibited transaction, as alleged here. Some courts have held that indemnification and contribution are unavailable under ERISA between a fiduciary and a nonfiduciary (see National Elec. Benefit Fund v Heary Bros. Lightning Protection Co., Inc., 931 F Supp 169, 192-193 [WD NY 1995]; see also Glaziers & Glassworkers Union Local 252 Annuity Fund v Newbridge Sec., Inc., 823 F Supp 1191 [ED Pa 1993]). Since the Supreme Court decision in Harris Trust & Sav. Bank v Salomon Smith Barney Inc. (530 US 238 [2000]), those decisions have been questioned (see Daniels v Bursey, 329 F Supp 2d 975, 979-981 [ND Ill 2004]). Harris held that a nonfiduciary “party in interest” may be sued for “appropriate equitable relief’ under section 502 (a) (3) (29 USC § 1132 [a] [3]) (Harris Trust & Sav. Bank, 530 US at 241). Defendants also acknowledge that plaintiffs could have sought contribution against them in the Beam action (see BS&K brief at 10). According to defendants, the only reason plaintiffs no longer have a right of contribution against them is due to the settlement bar under New York law contained in General Obligations Law § 15-108. Defendants have chosen to ignore federal common law on this point.
While contribution has been incorporated into the federal common law under ERISA, state statutes barring contribution for and against settling tortfeasors have not; in other words, because federal common law governs, as interpreted by this court, General Obligations Law § 15-108 does not apply in this case (see e.g. Donovan v Robbins, 752 F2d 1170, 1179-1181 [7th Cir 1985] [settlement bar rule, like those found in statutes such as General Obligations Law § 15-108, which bar contribution actions by a settling defendant against a nonsettling defendant and vice versa, are unenforceable in ERISA cases]; see also In re Masters Mates & Pilots Pension Plan & IRAP Litig., 957 F2d 1020, 1026-1027 [2d Cir 1992]). The Seventh Circuit, cited also by the Sixth Circuit Court of Appeals, contains the clearest reasoning for the rule:
“Where contribution is sought by one who has had to pay damages for violating a federal statute, the scope and limitations of the right of contribution are invariably treated as questions of federal rather than state law. ... A departure from that principle would be unjustified in the case of ERISA fiduciaries. . . . Although there is great peril in using general language to decide specific cases not foreseen by the *827 speaker, the language we have quoted and much else besides in the legislative history indicate that Congress had no great concern with preserving state prerogatives in this area. This mood makes it extremely unlikely that Congress would have wanted ERISA fiduciaries to be subject to the vagaries of state contribution law — a body of law so various, mutable, complex, and uncertain that its application to ERISA fiduciaries might well result in subjecting them to inconsistent duties and a risk of multiple liability. ERISA fiduciaries are entitled to a uniform nationwide rule” (Donovan, 752 F2d at 1179-1180 [emphasis supplied]; see also McDannold v Star Bank, N.A., 261 F3d 478, 487 [6th Cir 2001]; Daniels v Bursey, 329 F Supp 2d 975, 977 [ND Ill 2004]; see generally Via Christi Regional Med. Ctr., Inc. v Blue Cross and Blue Shield of Kansas, Inc., 2006 WL 3469544, *16, 2006 US Dist LEXIS 87194, *53 [D Kan, Nov. 30, 2006] [“Congress intended ERISA to pre-empt state laws and to make a uniform set of federal rules to govern rights and responsibilities relating to ERISA plans”]).
Defendants have called to the court’s attention a district court case in which General Obligations Law § 15-108 was involved (see Martin v Biasucci, 1992 WL 8157, 1992 US Dist LEXIS 235 [SD NY, Jan. 13, 1992]). However, that case contains no discussion of federal common law on the subject and fails to recognize the need for uniformity among the federal courts in applying a common law interpreting a preemptive federal statute.
Because the greater weight of federal authority holds that contribution for ERISA claims is available (a point that defendants do not dispute), and based on the need for uniformity among the decisions interpreting ERISA, the court is persuaded by Judge Posner’s discussion in Donovan that the New York settlement bar rule in General Obligations Law § 15-108 should not be applied here whether plaintiffs refer to their claims as seeking contribution or indemnification.
With respect to plaintiffs’ specific request for implied indemnification, as noted above, defendants argue: (1) the Beam plaintiffs never asserted any claim under sections 406 (b) (3) or 408 (e) and the law therefore precludes indemnity for a theory not alleged in the first-party action; (2) plaintiffs cannot plead under the law that they are without fault, a prerequisite for shifting responsibility under indemnity law; and (3) plaintiffs *828 would never have been liable under sections 406 (b) (3) or 408 (e) because the change-of-control bonuses do not as a matter of law violate ERISA.
Defendants misstate the law of indemnity by claiming that there cannot be indemnification for a claim that was never pleaded or proved in the Beam action. Rather, the law of indemnity holds that
“[a] defendant who voluntarily pays without waiting for judgment assumes the risk of being able to prove the actionable facts upon which his liability depends, as well as the reasonableness of the amount he pays when he seeks recovery by way of indemnity from the party ultimately determined to be liable. (Dunn v Uvalde Asphalt Paving Co., 175 N.Y. 214.)” (Codling v Paglia, 38 AD2d 154, 162 [3d Dept 1972], affd in part and revd in part on other grounds 32 NY 330 [1973]; see also McGurran v DiCanio Planned Dev. Corp., 251 AD2d 467, 468 [2d Dept 1998].)
Thus, despite the lack of a cause of action in the Beam plaintiffs’ complaint alleging per se liability for the bonuses paid to Mr. Donovan and Bill Bordages, plaintiffs here would be permitted to prove their own liability under sections 406 (b) (3) and/or 408 (e) and that equitable relief under section 502 (a) (3) would have been available (see e.g. Feuer v Menkes Feuer, Inc., 8 AD2d 294 [1st Dept 1959]). Assuming, arguendo, plaintiffs established the facts resulting in their liability for such relief, plaintiffs also would have to show good faith and reasonableness in the amount of the settlement attributable to those facts to shift liability for that amount to defendants (see id.). The good faith and reasonableness of the settlement usually present jury questions (IB NY PJI3d 1422 [2007]). Accordingly, the fact that the bonus claim was never pleaded or proved in the Beam action does not preclude plaintiffs from stating a cause of action for indemnity and any analysis beyond that point would involve a review of facts beyond the scope allowed on a motion to dismiss.
Defendants’ second argument is similarly unavailing because the per se liability which plaintiffs seek to shift to the defendants is not based on a finding of wrongdoing (see Bombardier Aerospace Empl. Welfare Benefits Plan v Ferrer, Poirot & Wansbrough, 354 F3d 348, 359 [5th Cir 2003], cert denied 541 US 1072 [2004]; Scholastic Corp. v Najah Kassem & Casper & De Toledo LLC, 389 F Supp 2d 402, 415-416 [D Conn 2005]). Moreover, the Harris case authorizing equitable relief against a non- *829 fiduciary incorporates the law of trusts, which would impose liability on the plaintiffs here if they “had actual or constructive knowledge of the circumstances that rendered the transaction unlawful” (Harris, 530 US at 251). Defendants do not dispute that plaintiffs had knowledge of the “circumstances” potentially giving rise to plaintiffs’ “per se” liability, i.e., the bonuses paid to Mr. Donovan and Bill Bordages. Further, defendants equate this concept of “knowledge” with plaintiffs’ fault, but, in actuality, the only way plaintiffs could be found to have had constructive knowledge of the transaction’s unlawfulness would have been by virtue of their attorneys’ knowledge. Thus, if the court were to attribute the attorneys’ error to plaintiffs under an agency theory, plaintiffs would be in a classic indemnity situation whereby the agent should indemnify the principal for the agent’s error (see Barile v Wright, 256 NY 1, 4 [1931]; Gleason v Temple Hill Assoc., 159 AD2d 682, 684 [2d Dept 1990]; 2A NY Jur 2d, Agency and Independent Contractors §§ 203, 206; Kreindler, Rodriguez, Beekman and Cook, New York Law of Torts § 9:7 [14 West’s NY Prac Series 2006]). At this juncture, it is premature to conclude that plaintiffs cannot establish these elements of their cause of action.
Defendants’ third point is not adequately established as a matter of law and would require the court to reach beyond the four corners of the complaint. The parties have cited no case law that limits the prohibitive effect of commissions to those paid by the ESOP (cf BS&K brief at 10, citing 29 CFR 2550.408e [a] [2] [2006] [“No commission may be charged directly or indirectly to the plan with respect to the transaction” (emphasis supplied)]). Additionally, although the record is incomplete because it does not contain evidence of the terms of the loan from Azon to the ESOP to finance the ESOP’s purchase of the shares, the loan from M&T to Azon includes a provision for payment of the change-of-control bonuses up to $2,000,000. On this motion, the court must presume that the ESOP would have repaid that amount to Azon if Azon had not first gone bankrupt.
Therefore, the selling shareholders have stated a cause of action for indemnification and the motion as to them is denied. However, HSBC seeks only indemnification for the breach of fiduciary duty claim it settled in the Beam action. This claim involves compensatory damages only and not equitable relief because, unlike the selling shareholders, HSBC was not in the possession of any funds or property of the ESOP (see Great-West *830 Life & Annuity Ins. Co. v Knudson, 534 US 204, 212 [2002]; Mertens v Hewitt Associates, 508 US 248, 255-263 [1993]). This type of shared liability, if at all, would have afforded HSBC a right of contribution and not a right of indemnification seeking to shift its entire liability to the defendants. Because HSBC only seeks indemnification here, its first cause of action must be dismissed.
C. Second Cause of Action: Malpractice by C&G
The second cause of action, on behalf of the selling shareholders, alleges that C&G served as the selling shareholders’ lawyers, and that C&G failed to conduct the due diligence necessary to properly advise them or to render an accurate opinion on the legality of the ESOP transaction (see amended complaint fit 110-112). According to plaintiffs, Mr. Rode’s actions and advice directly contradicted the expert opinion advice given by the lawyers at BS&K (amended complaint ff 74-75).
initially, although defendants do not raise the issue, the malpractice cause of action is not preempted by ERISA (see Gerosa v Savasta & Co., Inc., 329 F3d 317, 323 [2d Cir 2003], cert denied 540 US 967 [2003], cert denied 540 US 1074 [2003]; Airparts Co., Inc. v Custom Benefit Servs. of Austin, Inc., 28 F3d 1062, 1066-1067 [10th Cir 1994]; Painters of Phila. Dist. Council No. 21 Welfare Fund v Price Waterhouse, 879 F2d 1146, 1153 n 7 [3d Cir 1989]).
Secondly, as argued by C&G, the statute of limitations has run on behalf of any malpractice claim alleged by two of the selling shareholders, Nicole and John Bordages, because they are parties to only the last of the tolling agreements (see Africano affidavit, exhibit J). That agreement, between the two law firms and the plaintiffs, tolled the statute of limitations, to the extent that it had not already run, only for the period from September 7, 2005 to December 6, 2005 (id.). The statute of limitations began to run at the time of the alleged malpractice, if any. That date was September 21, 1999 at the latest, and the action was not commenced until December 2005 (see CPLR 214 [6]). Thus, C&G’s motion to dismiss the second cause of action is granted as to Nicole Bordages and John Bordages.
The tolling agreements executed by C&G and the four remaining selling shareholders, Janet S. Bordages, James G. Bannon, William H. Bannon, and Judith B. Ballew (hereinafter the four *831 shareholders), toll the statute of limitations on any claims the four shareholders may have against C&G from September 9, 2002 indefinitely, subject to termination on notice pursuant to the terms of the agreements (see Africano affidavit, exhibit J). There is no evidence that the tolling agreements were terminated. Therefore, because the statute of limitations for legal malpractice is three years (see CPLR 214 [6]), the four shareholders’ claims for malpractice against C&G are timely.
C&G contends, however, that the cause of action for legal malpractice fails as a matter of law despite the tolling agreements because there was never “an explicit undertaking” by it to represent any of the shareholders, individually or as a group, in connection with the ESOP transaction (see C&G brief at 15-17, quoting Wei Cheng Chang v Pi, 288 AD2d 378, 380 [2d Dept 2001], lv denied 99 NY2d 501 [2002]).
Generally,
“[t]o recover damages for legal malpractice, the plaintiff must prove not only that the attorney failed to exercise that degree of care, skill, and diligence commonly possessed and exercised by a member of the legal community . . . , but also that the attorney’s negligence was a proximate cause of the loss sustained, that the plaintiff incurred damages as a direct result of the attorney’s actions, and that the plaintiff would have been successful in the underlying action had the attorney exercised due care” (Volpe v Canfield, 237 AD2d 282, 283 [2d Dept 1997], lv denied 90 NY2d 802 [1997]).
Although C&G has established that, as stated in its opinion letters issued in connection with the ESOP transaction on September 21, 1999, it issued them in its role as counsel to Azon Corporation, the four shareholders have nonetheless stated a cause of action for legal malpractice based upon the actions of the parties as alleged by them (see generally Shanley v Welch, 31 AD3d 1127 [4th Dept 2006]). While the opinion letters specifically stated that C&G acted as counsel to Azon (see Gluckow affirmation, exhibit I to exhibit A [letter to M&T regarding Azon as borrower]; exhibit J [opinion letter to HSBC regarding the validity and legality of the transaction documents]) and, in the case of the opinion letter to HSBC, indicates that only HSBC is entitled to rely on it, the four shareholders have nonetheless stated a prima facie case of the existence of an attorney-client relationship between *832 them and C&G with respect to the sale of their stock to the ESOP The absence of a retainer agreement, the payment of fees, or other formalities, do not negate the cause of action (see e.g. McLenithan v McLenithan, 273 AD2d 757, 758-759 [3d Dept 2000]).
Specifically, Janet S. Bordages avers that C&G had provided legal services to Azon “predominately a family owned corporation” for more than 25 years; that Mr. Rode, who held executive positions with Azon and a seat on the board of directors, also had handled estate planning for Ms. Bordages and she had developed a significant degree of faith and trust in him; that she had assumed a leadership role within the family group; that Mr. Rode held discussions with and answered questions for the selling shareholders at board of directors’ meetings concerning the possible sale of the family members’ stock and the ESOP transaction; that Mr. Rode wrote to Ms. Bordages on July 21, 1999, on C&G letterhead, providing advice regarding the proposed ESOP transaction and tax treatment of the proceeds of the proposed sale; and, most importantly, that at no time did Mr. Rode advise her to obtain separate counsel to represent the selling shareholders on the transaction (Bordages affidavit 1fH 2-6). In Ms. Bordages’ view, C&G were her attorneys (id. 11 6). Further, there are sufficient allegations of proximate cause between the alleged negligence of C&G and the damages to the selling shareholders to survive a motion to dismiss.
Thus, C&G’s motion insofar as it seeks to dismiss the second cause of action as asserted by the four shareholders is denied; insofar as C&G’s motion seeks to dismiss the second cause of action as asserted by Nicole Bordages and John Bordages, it is granted.
D, Third Cause of Action: Negligent Misrepresentation by BS&K
BS&K contends that the third cause of action asserting negligent misrepresentation by it is, in essence, a claim for legal malpractice which is barred by the three-year statute of limitations in CPLR 214 (6). Alternatively, BS&K alleges that any negligent misrepresentation claim not sounding in fraud is barred by the three-year statute of limitations in CPLR 214 (4). On the merits, BS&K contends that plaintiffs cannot show reasonable reliance upon its opinion letter.
Initially, this cause of action is not preempted by ERISA because it “involve [s] distinctly traditional state law duties and *833 in no way impact [s] on the legislative interests enacted in ERISA” (see Carpenters’ Local Union No. 964 Pension Fund v Silverman, 1995 WL 378539, *5, 1995 US Dist LEXIS 8663, *15 [SD NY, June 26, 1995], citing Aetna Life Ins. Co. v Borges, 869 F2d 142, 145-147 [2d Cir 1989], cert denied 493 US 811 [1989]).
The tolling agreements executed by the selling shareholders with BS&K do not save this cause of action from being barred by a three-year statute of limitations, under either CPLR 214 (4) or (6), because the agreements toll any claims by the four shareholders only from September 2002 through September 2004 and September 7, 2005 through December 6, 2005 or for two years and three months; with respect to Nicole Bordages, John Bordages and HSBC, the toll is only for three months (see Africano affidavit, exhibit J). The causes of action accrued, at the latest, on the date of the transaction, September 21, 1999, and the complaint was filed in December 2005, or approximately six years and two months later. Thus, under a three-year statute of limitations, the four shareholders would be late by approximately 11 months, and the remaining three plaintiffs by 2 years and 11 months.
Thus, if the court were to determine that the negligent misrepresentation claims against BS&K in their “essence” sound in legal malpractice, and therefore are governed by the three-year statute of limitations, the third cause of action would be time-barred (see CPLR 214 [6]; see also IFD Constr. Corp. v Corddry Carpenter Dietz & Zack, 253 AD2d 89, 91-92 [1st Dept 1999]). Even if the court were to hold that plaintiffs had made out a prima facie case of negligent misrepresentation against BS&K, that cause of action would have to be dismissed, in any event, because the statute of limitations for negligent misrepresentation claims that do not sound in fraud is three years (see Fromer v Yogel, 50 F Supp 2d 227, 242 [SD NY 1999] [collecting New York cases]; see also IT Corp. v Ecology & Envtl. Eng’g, 275 AD2d 958, 959-960 [4th Dept 2000] [citing CPLR 214 (4), (6)], lv denied 96 NY2d 702 [2001]). There have been no allegations remotely sounding in fraud, including as to reasonable reliance. Therefore, the third cause of action for negligent misrepresentation against BS&K is dismissed as untimely.
E. Fourth Cause of Action: Negligent Misrepresentation by
C&G
C&G asserts that the fourth cause of action asserted by all of the plaintiffs alleging negligent misrepresentation on its part *834 must fail, absent evidence of privity between it and plaintiffs (see C&G brief at 18-19). The court has already rejected that contention in this procedural context with regard to the cause of action based in legal malpractice.
Further, C&G further contends that plaintiffs cannot show that they were negligent, that any such negligence was the proximate cause of the loss, or that plaintiffs suffered actual damages. Those are all issues of fact that, on this record, cannot be determined on a motion to dismiss.
C&G also asserts that the statute of limitations under CPLR 214 (4) bars the third cause of action on behalf of Nicole Bordages, John Bordages and HSBC (see C&G brief at 21, citing IT Corp. v Ecology & Envtl. Eng’g, 275 AD2d 958, 959 [4th Dept 2000]). Alternatively, C&G asserts that the essence of the cause of action by those three plaintiffs sounds in malpractice and is barred by CPLR 214 (6).
To the extent that C&G is found not to have served as counsel in fact to plaintiffs, plaintiffs have stated an alternative cause of action sounding in negligent misrepresentation. However, that cause of action is not based upon intentional misrepresentations; there are no allegations that C&G intentionally advised plaintiffs to enter into a prohibited transaction. The statute of limitations for negligent misrepresentation claims that do not sound in fraud is three years (see, supra at 34). As noted earlier, the four shareholders executed tolling agreements with C&G, tolling any causes of action they might have from September 9, 2002 indefinitely, and thus the negligent misrepresentation cause of action asserted by them is timely. However, the tolling agreement executed by HSBC, John Bordages and Nicole Bordages tolls any causes of action not expired by September 7, 2005 for three months. Any negligent misrepresentation claim HSBC, John Bordages and Nicole Bordages may have had accrued in September 1999; the applicable three-year statute expired, at the latest, in 2002. Thus, the cause of action is barred as asserted by HSBC, Nicole Bordages and John Bordages only.
Conclusion
Based on the foregoing, the court (1) grants the motions of BS&K and C&G to dismiss the first cause of action by HSBC but denies the motion as to that cause of action asserted by the selling shareholders; (2) grants the motion of C&G to dismiss the second cause of action by Nicole Bordages and John Bord *835 ages but denies the motion as to that cause of action asserted by the four shareholders; (3) grants the motion of BS&K to dismiss the third cause of action; and (4) grants the motion of C&G to dismiss the fourth cause of action by HSBC, Nicole Bordages and John Bordages, but denies the motion as to that cause of action by the four shareholders.